### GRAYDON v. HURD.

#### (Circuit Court of Appeals, Sixth Circuit. May 9, 1893.)

#### No. 73.

1. ADVERSE POSSESSION—POSSESSION OF OWNER AFTER FORECLOSURE—TENANCY
BY SUFFERANCE.
   If lands are sold under a decree of foreclosure, the grantee of the
mortgagor being made a party to the foreclosure suit, the sale extinguishes
the title of such grantee; and if he remains in possession after the sale
his possession is that of a tenant by sufferance, in subordination to the
title of the purchaser at the sale, and does not become adverse until the
relation of tenant by sufferance is disavowed, and the purchaser has
knowledge or notice of the disavowal.

2. SAME—EJECTMENT—INSTRUCTIONS — NOTICE OF DISAVOWAL OF TENANCY BY
SUFFERANCE.
   Where the possession of a defendant in ejectment was originally in sub-
ordination to the title of the plaintiff, an instruction that if the defend-
ant's possession was so notorious and open and visible as to be known to
the people generally in that vicinity, and if it was of such a character
as to be hostile to, and inconsistent with, the plaintiff's title, the jury may
find that the plaintiff had notice of its adverse character, although there
may be no proof of actual notice or knowledge, ignores the distinction
between the essential elements of adverse possession on the part of a
person who entered in subordination to the plaintiff's title, and adverse
possession on the part of a person who originally made a hostile entry,
and is erroneous.

3. RES JUDICATA — FORECLOSURE OF MORTGAGE OF EQUITABLE TITLE — ESTOP-
PEL OF OWNER OF LEGAL TITLE.
   Where the owner of the legal title to lands contracted to convey them,
and the owner of the equitable title under the contract thereafter mort-
gaged his interest in the lands, and sold and assigned it, and his as-
signee took title to the lands by warranty deed from the holder of the
legal title, a decree of foreclosure of the mortgage of the equitable title,
in a suit to which the assignee of the mortgagor and grantee of the legal
title is made a party, is a final adjudication that such assignee's interest
is subject to the mortgage, and he is estopped from asserting against the
purchaser at the foreclosure sale that the legal title which he acquired
from the original owner was paramount to the mortgage when the fore-
closure suit was begun.

In Error to the Circuit Court of the United States for the Eastern
District of Michigan.

At Law. Action of ejectment by William Graydon against
Lovell Hurd. Verdict and judgment for defendant. Plaintiff
brings error. Reversed.

Cahill & Ostrander, for plaintiff.
Geer & Williams, for defendant.

Before JACKSON and TAFT, Circuit Judges, and BARR, Dis-
trict Judge.

BARR, District Judge. This is an action of ejectment brought by William Graydon, a resident and citizen of the state of New Jersey, against Lovell Hurd, a resident and citizen of Michigan, to recover possession of a fractional quarter of a section of land lying in Genesee county, Mich. The title of this land was vested in William McKay in 1841. Subsequently, McKay sold the land to O'Donohue, and gave him a contract to convey. O'Donohue assigned this contract to Albert Swift, who mortgaged the land to Hope, Graydon, and Seeley on November 15, 1856. Afterwards, Swift, owing part of the purchase money to McKay, assigned his contract to Lovell Hurd, defendant, and he in May, 1857, paid McKay the balance of this purchase money, and obtained from him a warranty deed to the land. Hurd went into the possession of this land in 1856 or 1857, and in 1858 Graydon and Seeley brought suit in the circuit court of the district of Michigan against Albert Swift and Lovell Hurd. This suit was to foreclose the mortgage given by Swift on the land in controversy, and to foreclose a mortgage executed by Hurd to Swift on other land, which mortgage had been assigned by Swift to William Graydon and George H. Seeley, complainants therein. A subpoena was issued and executed on Swift and Hurd, and both entered their appearance, but did not answer. In February a decree of foreclosure was rendered, in which the court decreed that Hurd held his title to the land in controversy subject to complainant's mortgage, and as to said mortgage his claim was a subsequent incumbrance, and ordered the land sold to pay the mortgage debt. The court also decreed that when the sale was made, and confirmed, the purchaser should be delivered possession of the land by those in possession, "on the production of the deed for such premises, and a certified copy of the order confirming the report of such sale, after such order has become absolute."

The land was sold June 8, 1859, to Graydon and Seeley, and the sale confirmed and deed executed August 30, 1859. Subsequently, Seeley conveyed to Graydon, who brought this suit January 25, 1890. Hurd was in possession of the land when the suit for foreclosure was brought and sale made and confirmed, and remained in possession, either in person or by tenants, until the present suit was tried. He, both before and after the sale, in 1859, continued in possession, and there was no change in the character of the possession; but he continued to clear, stump, drain, and improve this land after the sale as before, and at the time of the bringing of the ejectment suit it was an improved farm. Hurd paid taxes on it for the years 1862, 1863, and 1864, and from 1880 until the institution of the ejectment suit. He claimed, on the trial, he had, by his adverse possession of more than 20 years, acquired title to the land. The plaintiff, William Graydon, and George H. Seeley lived in New York and New Jersey during the entire time possession was held by Hurd, and had no knowledge or information that Hurd claimed adverse possession or any title to the land after sale, or, indeed, was in possession, until 1878, when Graydon was informed of the fact by letter. Graydon paid taxes on the land

prior to 1862, and from 1864 to 1877. There are other facts shown in the record, but they are not material.

There are a number of assignments of error, some to the admission of testimony, but the most material are to the charge of the court upon the question of adverse and hostile possession. The court, after instructing the jury that the foreclosure suit against Swift and Hurd settled conclusively that the right of Hurd was subordinate to the mortgage, and that after the sale and confirmation thereof the title of Hurd came to an end, said to the jury:

"Now, then, if Hurd had done nothing more in this case than simply to retain the possession which he had then, he would be regarded as holding over after foreclosure. He would be regarded as a tenant by sufferance of the plaintiff, and the plaintiff would still recover, notwithstanding the length of time—nearly thirty years—which had elapsed since the foreclosure. But a person, though holding in that way, may acquire adverse possession. Now, what do we understand by adverse possession? Well, I will illustrate it. Suppose that the defendant, after this foreclosure, had written to the plaintiff, saying to him: 'I deny your right under this foreclosure. I propose to claim and hold this land adversely to your title. You will please take notice of this.' From that time his possession would be adverse, and hostile to the possession of the plaintiff. Now, then, nothing of that kind was done in the case. The plaintiff did not have any direct notice of the continued possession, and the adverse character of the possession of the defendant there. But I think that the plaintiff is bound by such notice as the public had generally with regard to what was going on on that land. Now, then, what is the evidence in this case upon that point? It is that Hurd not only continued his possession of the land, but he went on and improved it at very considerable expense. He cut down much of the standing timber. He put up the frame of a barn. There seems to have been a small house put up. He cleared the land. He has gone and cultivated it. And the question I shall submit to you is this: Whether these acts indicate to your minds an intent on his part to claim this land adversely to the title of the plaintiff. If you find in this case that for twenty years before the beginning of this suit the defendant's possession had been open, notorious, adverse, hostile, and continuous, then you are at liberty to find a verdict for the defendant, notwithstanding the title which the plaintiff had by reason of these foreclosure proceedings. On the other hand, if you find that such possession is not adverse, —and the object of my remarks has been rather to define to you what an adverse possession is,—if you shall find that his possession has not been adverse, then the plaintiff is entitled to your verdict. The statute of limitations does not begin to run until the possession became hostile, and the jury is instructed that they can render that verdict only after the possession has become hostile, no matter how long continued the actual and adverse possession may have been. It is not enough that the possession of Hurd has been actual and continued and notorious for a period of twenty years or more. Unless, in addition to all these, such possession was also hostile for the full period of twenty years before the beginning of the suit, plaintiff must recover. * * * And the question of the adverse character of the possession depends upon the further question whether you find that his acts done upon that land in the shape of improvements, and the taking of the profits of cultivation, etc., have been such as he would not take had he been a tenant. You must find that it was done under the theory that he was entitled to—to make it adverse or hostile—that the possession was such as to be inconsistent with the idea that he was holding over under the mortgage. It must be such a possession as one would not take unless he believed that he was the owner of the land, and not a tenant. If you find such to be the case, then you are at liberty say that it was an adverse possession. If, however, you are able to reconcile the acts of the defendant with the idea that he was simply holding over after foreclosure of this mortgage as the tenant of the plaintiff, then your verdict shall be for the plaintiff. Now, then, as

I said before, I think the plaintiff is bound by notice of such acts as the public generally in that neighborhood could take notice of. And if you find that his possession was so notorious and open and visible as to be known to the public generally in that vicinity, then you are authorized to find that the plaintiff had notice of it, although you may not be able to put your finger upon any actual notice."

Juror: "You add to 'adverse,' 'hostile.' What is the discrimination between the two?"

The Court: "It is more a matter of words than anything else. An adverse possession must be a possession hostile to the title of the owner of the land. It must be asserted against him, and not in subordination to that title."

This extended quotation from the charge presents clearly the propositions of law announced by the court, and embraces the alleged errors complained of by the plaintiff to the charge. There can be no doubt that the foreclosure suit, and the sale thereon, when confirmed, and a deed made thereunder, put an end to Hurd's right and interest in the land in controversy. He could not thereafter claim possession under color of title, because he had none, nor could he claim as a stranger until or unless his relation of tenant by sufferance was relinquished or disavowed, and, in addition, knowledge or notice of such relinquishment or disavowal brought home to Graydon. Hurd was not made a trespasser upon this land by the sale, confirmation, and the execution of the deed, but by operation of law he became a tenant by sufferance of the purchaser. The decree of sale recognized this relation when it directed that persons in possession of the land should deliver possession to the purchaser "on production of the deed to the premises, and a certified copy of the order confirming the report of such sale after such order has become absolute."

The supreme court has in Zeller v. Eckert, 4 How. 290, stated the rule clearly and distinctly. The court, after stating that a trustee may disavow and disclaim his trust; a tenant, the title of his landlord after expiration of his lease; a vendee, the title of his vendor after breach of the contract, etc.,—said:

"The only distinction between this class of cases and those in which no privity between the parties existed when the possession commenced is in the degree of proof required to establish the adverse character of the possession. As that was originally taken and held in subserviency to the title of the real owner, a clear, positive, and continued disavowal of the title and assertion of an adverse right, and to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute."

The case of Woolworth v. Root, 40 Fed. Rep. 723, decided by Justice Brewer, is not unlike the one under consideration. There, Root entered into possession of certain real estate, claiming title, in 1869, and a suit to quiet title was brought by Morton, claiming title to the land then in possession of Root. Morton obtained a decree in 1873, sustaining his title, and requiring Root to convey to Morton his right and title. This conveyance was not made by Root, but by a special master under order of court. Many years afterwards a suit was brought by Woolworth, claiming under Morton, to enforce the decree in the former suit against Root; and he sought to defend by a plea of 10 years' adverse possession under

the statute of limitation, alleging he had acquired title by more than 10 years' possession after the decree of 1873. The court say:

"He does not pretend that the character of his possession has changed, or that any notice was ever given to the Mortons or to this complainant of the title or claim under which he was holding possession. * * * By the decree, and the deed made in pursuance of it, all title and right of possession in Root was transferred to complainant. Under these circumstances, no retention of possession was adverse to the title conveyed, and he could not bolster up a title based upon that possession until he had first given notice of his intention to claim adversely."

In Willison v. Watkins, 3 Pet. 43, the question was whether the tenant who went into possession under a title could acquire title, or get the benefit of an adverse possession, at all, unless he first surrendered the possession to the landlord, and took possession thereafter. The court held an actual surrender of possession was not necessary, but the holder of the title under which possession was originally taken must have had knowledge or notice of the changed relation and the adverse holding before the statute of limitation began to run.

While the decisions of the Michigan supreme court are not so distinct upon this question, we think they concur, substantially, in the view taken by the supreme court of the United States. Bloomer v. Henderson, 8 Mich. 405; Jeffery v. Hursh, 45 Mich. 59, 7 N. W. Rep. 221; Paldi v. Paldi, 84 Mich. 346, 47 N. W. Rep. 510; Allen v. Carpenter, 15 Mich. 25. See, also, Quinn v. Quinn, 27 Wis. 170; Ringo v. Woodruff, 43 Ark. 470; State v. Conner, 69 Ala. 212. There is some conflict in the decisions of the state courts upon this question, but both reason and the weight of authority sustain the view indicated.

The necessity for Graydon to have had knowledge or notice of the acts which were claimed to have made Hurd's possession adverse and hostile after the sale under the foreclosure decree seems to have been recognized by the court, to its fullest extent, in parts of the charge; but the manner in which the jury were allowed to infer or find such knowledge or notice to have been had by Graydon is, we think, fatally misleading. Thus, the court said to the jury:

"The plaintiff did not have any direct notice of the continued possession, and the adverse character of the possession, of the defendant there. But I think that the plaintiff is bound by such notice as the public had generally with regard to what was going on on that land."

This instruction is not modified, but rather emphasized, in a subsequent part of the charge, where the jury were instructed that—

"If Hurd's possession was so notorious and open and visible as to be known to the people generally in that vicinity, then you are authorized to find that the plaintiff had notice of it, although you might not be able to put your finger upon any actual notice."

In view of the fact that the purchasers resided in another state at the time of the sale in the foreclosure suit, and continued nonresidents of Michigan, and there was not the slightest evidence that Graydon had any knowledge or notice of Hurd's continued possession of this land, or of the acts which are claimed to have made

his possession adverse, until 1878, this instruction was material, and probably decisive of the case. It was, in effect, entirely ignoring the distinction between what is necessary to acquire an adverse and hostile possession of land by those who have entered under and in subordination to the title of another, and commenced to hold thereunder, and those whose entry was adverse, and whose possession had never been subordinate to the title against which the possession is sought to be adverse. This distinction is material, and should not be ignored.

But it is insisted by appellees that Hurd had acquired the legal title of McKay, and that, although the equitable right of Swift had been mortgaged when Hurd took an assignment of the equitable right from him, yet the legal title was paramount to the mortgage when the foreclosure suit was brought; hence Hurd was never the tenant of Graydon and Seeley after their purchase, and had no such relation to them. It may be that Hurd would, in the foreclosure suit, have had some claim to be repaid the money which he had paid McKay; but whatever claim he might have had in that suit was settled adversely to him by that decree, and as he entered into possession under his assignment of Swift's right and title, which was then mortgaged, his possession was subordinate to the right of the mortgagees, and such was his possession when the sale was made, and deed executed, in the foreclosure suit.

It is not necessary to consider the other errors assigned, as the case must go back for a new trial. The verdict and judgment of the court below must therefore be set aside, and the case remanded for further proceedings in conformity with this opinion, and it is so ordered.