## ROXA T. PALDI v. ANGELINE PALDI.

*Adverse possession—Ejectment—Claim for improvements—Taxes—
Validity of roll.*

84  346
92  138

84  346
95  410

84  346
105  321

84  346
{137  648

1. The presumption that the continued occupancy of land by a grantor after its conveyance and the recording of the deed is for a temporary purpose, without claim of right, and merely as a tenant at sufferance of the grantee *(Bloomer v. Henderson,* 8 Mich. 405; *Dawson v. Bank,* 15 Id. 489; *Humphrey v. Hurd,* 29 Id. 44; *Jeffery v. Hursh,* 45 Id. 59), can only be overthrown by circumstances tending to show a clear renunciation of such tenancy, brought home to the grantee, and of a subsequent exclusive, adverse possession by the grantor under a claim of superior right.

2. A supervisor authorized a neighbor to copy the roll of the previous year so far as the real estate was concerned, making only such changes as were necessary by change of owners, and to attach and sign the statutory certificate; which action is held not to be in accordance with the law, which requires the exercise of the best judgment of the supervisor in assessing property at its cash value.

3. A supervisor's certificate of assessment under How. Stat. § 1025, in which the words "*fixed* or auction sale" are used instead of "*forced* or auction sale," is fatally defective.

4. The record of equalization set forth in the opinion is held to be too uncertain to have any value as a public record.

5. Where a grantor remains in possession of the granted premises in subordination to the rights of the grantee, and during such occupancy buys in an outstanding tax title, the recording of the tax deed is not, standing alone, such an assertion of an independent, hostile title as will entitle the grantor to recover for improvements made after securing such tax deed, but a claim of an adverse holding thereunder must have been expressly asserted and brought home to the grantee.

Error to St. Clair. (Canfield, J.) Argued December 2 and 3, 1890. Decided December 24, 1890.

Ejectment. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Frank Whipple,* for appellant, contended:-

1. Mrs. Paldi made no deed. A wife, joining in a conveyance with her husband, conveys her dower interest alone; citing *Hovey v. Smith,* 22 Mich. 172; *Kitchell v. Mudgett,* 37 Id. 85; *Carley v. Fox,* 38 Id. 389; nor can she become liable on an executory promise except concerning her separate estate; citing *De Vries v. Conklin,* 22 Mich. 255; *Emery v. Lord,* 26 Id. 431; *West v. Laraway,* 28 Id. 464; *Ross v. Walker,* 31 Id. 120.

2. Possession by a grantor after his conveyance may be so continued as to raise a presumption of rights retained or since acquired in the land; citing *Bennett v. Robinson,* 27 Mich. 26; *Jeffery v. Hursh,* 45 Id. 59; and the facts bring Justin L. Paldi clearly within the rule laid down in *Bower v. Earl,* 18 Mich. 367; *McCall v. Wells,* 55 Id. 171; *Youngs v. Cunningham,* 57 Id. 153; *Cook v. Clinton,* 64 Id. 309; *Greene v. Anglemire,* 77 Id. 168.

*Albert McCall* and *Avery Bros.,* for plaintiff, contended for the doctrine stated in the opinion.

CAHILL, J. This is an action of ejectment commenced December 21, 1887, in the circuit court for the county of St. Clair, to recover the S. E. ¼ of section 32, township 8 N., range 14 E., in that county. The plaintiff shows the following title:

1. Certified copy of a patent from United States to Ange Paldi, dated March 3, 1854.

2. The record of a deed from Angelo Paldi and Marie Ann H. Paldi to Justin L. Paldi, dated April 30, 1872, recorded July 25, 1872.

3. The record of a deed from Justin L. Paldi to the plaintiff, dated November 18, 1879, recorded November 21, 1879.

The plaintiff also put in evidence tending to show that Ange Paldi, to whom the patent was issued, was the same person who, with his wife, executed the deed to Justin L. Paldi, April 30, 1872, under the name of Angelo Paldi; that he was an Italian by birth; that his real name was Angelo, but that he was sometimes known and called by the name of "Ange." It was also shown that after obtain-

ing his patent he went into actual possession of the land, and resided on it with his family for some years. Justin L. Paldi is a son of Angelo Paldi, and the plaintiff is the wife of Justin L. Defendant is a daughter of Angelo Paldi, and a sister of Justin L. The defendant claims title—

1. Under a tax deed made by the Auditor General for the taxes of 1873 to Frank A. Dean.

2. By a quitclaim deed from Frank A. Dean to Marie Ann H. Paldi.

3. By adverse possession held by this Marie Ann H. Paldi in her life-time, and by defendant since her death.

4. By will of Marie Ann H. Paldi, by which the land was devised to defendant.

On the trial in the circuit, the circuit judge directed a verdict for the plaintiff, upon the ground that the plaintiff, having shown a clear title, was entitled to recover, unless such *prima facie* title was overthrown by the defendant; and that the defendant had failed to defeat plaintiff's title—

1. Because the tax title was invalid.

2. Because there was no evidence of such an exclusive and adverse occupation for the length of time required by the statute as to form a basis of title by prescription.

In this we think the circuit judge was right. The facts upon which defendant bases her title by adverse possession are as follows: For some years prior to 1872, Angelo Paldi, who located the land, resided with his family upon it. In that year, for reasons which are not explained, and which are unimportant to this inquiry, he left his family and went to live in the state of New York, where it is claimed he afterwards procured a divorce from his wife, and remarried. Before going away he made a deed of this land to his son Justin L. Paldi, in which his wife joined. After executing this deed, the wife, who was the mother of the grantee named in it,

still remained with her family upon the farm, and continued to live there until her death, in 1886. During a part of the same time, commencing in July, 1872, Justin L. Paldi resided with his family in the same house with his mother and her family. The circumstances under which he resided there are in dispute; He claims that he was there as owner, operating and running the farm. Defend_ant claims that he was a mere boarder. It is not important to determine this question. There is nothing in the evidence to show that, during the first few years after she joined with her husband in the deed to Justin L., Mrs. Paldi claimed to occupy the land in any other way than as in subordination to her grantee. It was reasonable and natural that she should be allowed by her son, after the desertion of her husband, to remain in possession of the old homestead. It is true that defendant herself testifies that her mother always claimed to own the farm from the time her husband left until her death, and that since that time defendant claimed to own it; but it nowhere appears that this claim was made to Justin, or that he knew that his mother, after joining in the deed of the farm to him, was claiming to hold in opposition thereto. The defendant testified as follows.

" Q. Who worked the farm from your father's leaving to your mother's death?

" A. Well, mother and I, generally. I was the head, you know; only when Justin came there, he wanted to run things to suit himself, but still we took it in our hands to suit ourselves.

" Q. What occupancy has Justin had of the farm since your father went away?

" A. I don't know as he ever had any, with the exception of once in a while. He never had any occupancy of the farm."

The defendant, Angeline, was herself one of the witnesses to the deed from Angelo and wife to Justin L. She and her mother must be presumed, therefore, to have

known just what rights Justin claimed in the property, and yet she does not testify that any question was made to Justin about this deed, or of his rights under it, until some years afterwards. It was said by this Court in *Bloomer v. Henderson*, 8 Mich. 405, that—

"If a party executes and delivers to another a solemn deed of conveyance of the land itself, and suffers that deed to go upon record, he says to all the world: 'Whatever right I have, or may have claimed to have, in this land, I have conveyed to my grantee, and though I am yet in possession it is for a temporary purpose, without claim of right, and merely as a tenant at sufferance to my grantee.'"

This doctrine was approved in *Dawson v. Bank*, 15 Mich. 489; *Humphrey v. Hurd*, 29 Id. 44; and *Jeffery v. Hursh*, 45 Id. 59. This presumption could only be overthrown by circumstances tending to show a clear renunciation of the rights of the grantor, brought home to the knowledge of the grantee, and of a subsequent exclusive, adverse possession under claim of superior right.

There is no evidence in the record that the right of the grantee, Justin L. Paldi, under his deed, was at any time questioned by his mother, at least during the year and over that he lived with her on the farm in 1872 and 1873. There is evidence tending to show that in 1879 she accepted a life-lease from the plaintiff. It appears also that, in 1882, the defendant, together with all of her brothers, except Justin L., filed a bill in the St. Clair circuit, in chancery, against Justin L. Paldi and the present plaintiff, setting out that the deed, under which they claim title from Angelo Paldi and wife, was a forgery; that Angelo Paldi continued to be the owner of the land up to and including the date of his death, in the year 1878; that the greater portion of said land was unimproved, and in a wild state, but the whole thereof was and is known as the "Paldi Homestead;" and that the first two

descriptions (being the E. ½ of the N. E. ¼ of section
32, and the W. ½ of the N. W. ¼ of section 33) have
been, since the death of Angelo Paldi, in the possession
of his widow and daughter, Angeline Paldi. But there
was no allegation in the bill that the widow of Angelo
Paldi or the present defendant was in the possession of
the land in question in this suit. The bill alleged that
their father was dead, and that complainants claimed this
and other lands as his heirs at law, subject to the right
of dower of Marie Ann H. Paldi as his widow. Justin
L. and Roxa F. Paldi filed their several answers to this
bill, denying that the deed was a forgery, claiming that
it was executed, acknowledged, and delivered for the con-
sideration named therein of $5,000; that under it defend-
ant Justin L. took possession of the entire of said prem-
ises on or about July 12, 1872, and has ever since lived
thereon with his wife, Roxa. It is conceded that the
proceedings so commenced by bill were discontinued in
September, 1883, but for what reason does not appear.

Marie Ann H. Paldi, at her death, left a will devising
all her estate to defendant, Angeline, who was named
executrix. This will was admitted to probate. The
defendant, as executrix, filed an inventory of the prop-
erty that had come into her possession, in which she in-
cluded the land in question under the following descrip-
tion: "S. E. ¼ of sec. 32, T. 8, R. 14 E., *a tax title*,
$200.14." The filing of the bill by defendant, and the
return of the inventory of her mother's estate, is relied
on by plaintiff as evidence tending to show that the
defendant has not always regarded the land as belonging
to her mother. We think the testimony tended legiti-
mately to disprove her claim in this case that after her
father left, in 1872, her mother claimed to own the land.

The tax deed under which defendant claimed was held
to be invalid, but upon what ground the record does not

disclose.    The tax deed was invalid for the following reasons:

1. There was no valid assessment made by the supervisor, the assessment roll having been made out and certified to by a neighbor, as appears by the testimony of the supervisor, and the neighbor who made the roll, as follows: John D. Jones was sworn for the plaintiff, and testified that he was supervisor of Brockway township in 1873, and produced the assessment roll of that town for that year.

"*Q.* Mr. Jones, will you state to the court and jury who made that assessment roll?

"*A.* I made a part of it, and John S. Duffie made a part of it at my request. Let me tell you how that happened: I had a drive over on Cass river, and I was elected supervisor, and I had to go and attend to my drive. I had some twenty-eight million feet of logs over there, and I went over there next day after election to drive my drive of logs from Saginaw, and the consequence was I didn't get back again until the Saturday before the review. The review comes on the third Tuesday after the third Monday. I think it was Tuesday. Now, I went to Mr. Duffie as quick as I got home, and I supposed they had appointed another supervisor, but I found they hadn't, so I went to Mr. Duffie and asked him if he wouldn't take my year before roll and the roll that I had for that year and copy from the last-year roll all the names, and, as far as it was right, to carry them out, the value the same as they were on the old roll, not to change any of them, and I would go round and take up the deaths and births and the personal property.    *    *    *

"*Q.* Look at the certificate and see whose handwriting it is.

"*A.* I think it is Mr. Duffie's.    I told him to do it.

"*Q.* Whose handwriting is the signature?

"*A.* That is Mr. Duffie's.    I authorized him to do it for me, so as to get the rolls ready for the review."

John S. Duffie testified that in 1873 he resided in the township of Brockway, and knew John D. Jones, supervisor.

"*Q.* Will you state how that assessment roll was made for the year 1873.

"*A.* Mr. Jones was on a drive of logs on the Cass river, and he requested me to take the assessment roll for that town for 1872 and copy that, except such changes as I knew had taken place in the ownership of land, and where I knew there was no change to keep the same personal property. We took the names from the old roll, leaving the value of real estate the same, and, where the changes took place in personalty, that was left out for Mr. Jones to fix, and the whole roll was copied in that way. He told me to go on and copy the whole of it, and prepare it for the review. I copied the names, descriptions, number of acres, value of real estate, and the greater part of the personal property. I attached this certificate to it so as to have it ready for Mr. Jones. I made it out and signed it."

This is not what the law requires of a supervisor, charged with assessing property at its true cash value. The performance of this duty requires of him the exercise of his own best judgment. As was said in *Woodman v. Auditor General*, 52 Mich. 30:

"The listing of property [in an assessment roll] is clerical, but the ascertaining and determining its value is judicial, requiring the judgment of the supervisor under his oath of office, and cannot be dispensed with in making a valid assessment roll."

In this case the supervisor authorized Mr. Duffie to copy the roll of the previous year so far as the real estate was concerned, making only such changes as were necessary by change of owners, and to make out and sign his certificate. These are duties which cannot be delegated by the supervisor, but must be performed by him personally.

2. The supervisor's certificate is not sufficient under How. Stat. § 1025, and the numerous decisions of this Court. In that part of the certificate in which he stated that he had estimated the same at what he believed to

be the true cash value thereof, and not at the price it would sell for at a forced or auction sale, the certificate used the words "*fixed* or auction sale." This may have been a clerical error, but great strictness has been insisted upon in all cases where the certificate of the supervisor has been under consideration. The form of it was amended from time to time by the Legislature with the view to preventing the almost universal tendency to undervalue property by the supervisors in the interest of their own localities as against others. We cannot say that the word "fixed" was intended by the supervisor to have the same meaning as the word "forced" used in the statute. *Silsbee v. Stockle*, 44 Mich. 566; *Fuller v. Hannahs*, Id. 578. In the latter case, the only thing omitted from the certificate were the words "as aforesaid" in that part of the certificate which stated, with reference to the personal property, "that I have estimated the same at the true cash value *as aforesaid* according to my best information and belief."

3. There was not such an equalization of the rolls as the statute requires. The tax law in force when the taxes of 1873 were levied, required the supervisors to equalize the valuations of the real estate in the several townships and wards, pointed out the steps to be taken to that end, and required a record to be kept of the action taken. As has been frequently pointed out, this is an important step in tax proceedings. Upon it depends the amount of the State and county taxes that shall be apportioned to the several townships and wards of the county. If it is important to have a record, it is equally important that the record should be intelligible and certain as to its meaning, so that a tax-payer who chooses to examine it can *know*, and need not be obliged to guess, what action was taken. The records of the board for the year in

question were so carelessly kept and badly mixed that it is impossible to tell with certainty what action was taken on the subject of equalization. The record shows the following, commencing with page 83 of volume 3 of the supervisors' record:

" Committee on equalization submit the following report, and recommended its adoption as reported. Moved by V. A. Saph, and supported by William Grace, that the report be accepted and adopted. Moved by G. S. Granger, and supported by J. A. McMartin, that the town of Port Huron be equalized at $90,000. Motion lost."

Here the subject of equalization seems to have been dropped, the next entry in the record being:

"Committee on criminal accounts, by Patrick Fox for committee, reported on sundry accounts,   *   *   *   and recommended their payment as reported."

Then follows a page or more of resolutions relating to accounts and other matters entirely disconnected with the subject of equalization, after which appears the following:

" Moved by G. S. Granger, supported by G. L. Cornell, that G. F. Collins and B. C. Farrand constitute a committee to confer with the Board of State Auditors in reference to the Yohr matter, provided the bail of Mr. Yohr pay the expenses of said committee. Lost, a majority of all the members voting against the same. [Then follows the following apparently irrelevant table:]

| Brockway. | Real Estate Assessed. | Real Estate Equalized. | Personal Estate. | Tot'l Estate Assessed. | Tot'l Estate. Equalized. |
|---|---|---|---|---|---|
| | $146,065 | $135,170 | $25,505 | $171,570 | $160,765 |

—The majority of all the members elect voting against it.

" Moved by Mr. McMartin, supported by G. S. Granger, that the Second ward of the city of St. Clair be equalized by the sum of $1,374.95. Lost, the majority of all the members elected voting against it.

"Moved by D. G. Finlayson, supported by James Demarest, that the township of Grant be equalized at $125,000. Lost, a majority of all the members elected voting against it. The original motion was then carried, a majority of the members voting therefor."

It is quite possible that "the original motion," which it is said was then carried, a majority of the members voting therefor, may have had some connection with the question of equalization; but it is equally possible that it did not. It is too uncertain to have any value as a public record.

At first I was of the opinion that defendant was entitled to her improvements made since her mother acquired the tax title in 1884. The objections to it as stated by plaintiff's counsel are:

1. That, as defendant claims that her mother was in possession of the land in 1873, it was her duty to pay the taxes; and that she could not acquire a tax title based on a tax which she ought to have paid. But the plaintiff says her husband, Justin L. Paldi, was in possession in 1873, and she is allowed to recover on the theory that this was true. If the possession of plaintiff's grantor was good enough to hold the title, it was *his* duty to pay the taxes, it not appearing that there was any agreement between him and his tenant (his mother) that the latter should pay them.

2. That there is no evidence that Marie Ann H. Paldi made any different claim of title after she acquired the tax title. In 1884, she bought this outstanding tax title, and put her deed of record.

My brethren are of the opinion that this was not, standing alone, such an assertion of an independent, hostile title as would entitle her to improvements; that, having been in possession in subordination to the plaintiff, any claim of an adverse holding under the tax title must have been expressly asserted and brought home to

the plaintiff; and that the mere recording of her hostile title was not sufficient. In this view I concur.

The judgment must be affirmed, with costs.

The other Justices concurred.