GRAHAM *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered February 2, 1901.

1. CONVEYANCE FOR RAILROAD PURPOSES—NONUSER—FORFEITURE.— Where a railway company purchased a tract of land for railroad purposes only, and used a portion of it, but failed to use the remainder for more than seven years, during which time it was cultivated by the grantor and those holding under him, such nonuser will not, as to such remainder, operate as a forfeiture.   (Page 565.)

2. ADVERSE POSSESSION—VENDOR AND VENDEE.—Proof that land sold to a railway company for railroad purposes only remained in the possession of the vendor and those holding under him, and was cultivated by them, is not, of itself, sufficient to show a holding adverse to the railroad company.   (Page 566.)

3. EJECTMENT—RIGHT OF WAY.—A right of way conveyed to a railway company, though an easement merely, gives to the company a right to exclusive possession for railroad purposes, which will support an action of ejectment against one wrongfully in possession.   (Page 568.)

4. CONVEYANCE FOR RAILROAD PURPOSES—CONSTRUCTION.—A deed to a railway company which, after describing the right of way, depot grounds, sidetracks, switches and "Y", as laid out, conveyed the right of way and depot grounds so described, "with the right to enter upon said lands for the construction of said railway through and upon the same, to have and to hold the same to the said party of the second part so long as said lands are used for the purposes of a railroad, and no longer," carries a perpetual easement merely, and not the fee in the land.  (Page 569.)

5. EJECTMENT—DAMAGES.—Land conveyed to a railway company for railroad purposes only, with the railway company's acquiescence, remained in the possession of the grantor and of those claiming under him, and was cultivated by them for a number of years until they notified the railway company that they were holding adversely, when the railway company at once brought suit to recover possession. *Held*, that a verdict for substantial damages in favor of the railway company will be reversed unless a remittitur of all in excess of nominal damages is made.  (Page 570.)

Appeal from St. Francis Circuit Court.

HANCE N. HUTTON, Judge.

### STATEMENT BY THE COURT.

The facts in this case, as far as it is necessary to state them, are as follows:  C. C. Graham and W. H. Howes were owners of a tract of land in St. Francis county.  The St. Louis, Iron Mountain & Southern Railway Company in 1882 purchased a portion of this land to be used as depot grounds, side tracks and a "Y."  The deed to the company recites that whereas the company is engaged in constructing a railroad through the county of St. Francis from the south to an intersection with the Memphis & Little Rock Railroad and also to a connection with the Iron Mountain & Helena railroad, and then, after minutely describing the right of way, depot grounds, side tracks, switches and "Y," as laid out, proceeds as follows:  "And, whereas, said parties of the first part are the owners and are seized and possessed of all that part of the right of way and depot grounds hereinbefore described which lies in the west half of section 28 aforesaid, and have agreed to convey the lands so owned and possessed by them to the said party of the second part for the purpose of constructing and maintaining its proposed railroad, which tract of land so to be conveyed contains 38 acres of land, more or less.  Now, therefore, the said parties of the first part, for and in consideration of the premises and of

the sum of $950 to them paid by the said party of the second part, do by these presents give, grant, bargain, sell and convey to the said party of the second part the right of way and depot grounds hereinbefore described, with the right to enter upon said lands for the construction of said railway through and upon the same. To have and to hold the same to the said party of the second part so long as said lands are used for the purposes of a railroad, and no longer."

This deed was executed in July, 1882. Shortly afterwards the company constructed its railroad across the land mentioned in the deed, and has ever since continued to operate said railroad and to use the greater portion of the land for the purposes named in the deed. But a part of the tract which it obtained for the purpose of constructing a "Y" it has not used. This part of the land conveyed lay in the grantor's enclosure, and was allowed to remain in that condition for several years. After the execution of the deed C. C. Graham obtained the interest of Howes, the other grantor, and thus became the sole owner of the tract of land of which that described in the deed to the company was a part. He died in 1886, and left a will devising the land across which the right of way was conveyed to his son, W. S. Graham, who now owns it, and who is also in possession of a part of the land conveyed to the company.

This action was commenced by the company in 1897, to recover possession of that portion of the land held by Graham. Graham, for defense, set up that the land had been forfeited by failure of company to comply with the condition in the deed, and also set up adverse possession of over seven years. On a trial there was a verdict and judgment for the plaintiff, from which Graham appealed.

*Norton & Prewett,* for appellant.

A grantor may acquire title by adverse possession against his grantee. 11 Pac. 778; 28 Cal. 180; 86 N. Y. 57; 57 Me. 268; 11 Tex. 24; Maupin, Marketable Titles, 495; 17 N. H. 536; 33 Barb. 491; 37 Barb. 244; 9 Cush. 497; 57 Am. Dec. 65; 57 Me. 330; 99 Am. Dec. 772; 79 Tex. 310; 7 Jones' L. 616; Sedg. & W. Tr. of Tit. 606; 86 N. Y. 68; 47 Cal. 485; 2 Dembitz, Land Titles, 1399. *Cf.* 16 Ark. 122; 44 Ark. 452; Wood, Lim. 219; 43 Ark. 504. Evn if there was a mistake of boundary, the plea of adverse possession was good. 59 Ark. 626. Possession of part of the land

by appellee does not prevent the running of the statute as to the part adversely held. 2 Pet. 212. There was a forfeiture for non-performance of conditions subsequent. No time being fixed for the performance of the condition subsequent, a reasonable time therefor is allowed. . 3 S. W. 23; 2 Wash. Real Prop. 11. The grantor in possession is presumed, after breach of condition subsequent, to hold for the purpose of enforcing the forfeiture. 7 S. W. 19.

*Dodge & Johnson,* for appellee.

Conditions subsequent must be created by express terms or by clear implication, and will be strictly construed. 36 Am. & Eng. R. Cas. 425. Mere nonuser did not work a forfiture. 51 Am. & Eng. R. Cas. 426. The attitude of the parties negatives the idea of adverse possession. Adverse possession by a vendor against his vendee must be evidenced by unequivocal acts of hostility brought to the knowledge of the vendee. 1 Am. & Eng. Enc. Law (2d Ed.), 818; 152 Pa. St. 444; 84 Mich. 346. Constructive possession always follows the legal title. 4 S. & R. 456; 4 Wheat. 213. It cannot arise against the true owner in possession of any portion of a tract as to other portions of the tract not in adverse possession, in favor of a mere claimant under color of title in possession of another portion of the same tract. 102 U. S. 113, 133; 50 Cal. 26; 4 Pa. St. 254; 25 S. W. 458.

RIDDICK, J., (after stating the facts). This is an action of ejectment brought by the railway company to recover twelve acres of land which the ancestor of defendant had sold and conveyed to the company for railway purposes. The defendant contends that all the right and interest in this land conveyed to the company by the deed of his father was forfeited by reason of a failure to comply with a condition in the deed. The clause of the deed referred to is as follows: "To have and to hold the same to the said party of the second part so long as said lands are used for the purpose of a railroad, and no longer." The proof shows that the railroad was built, and that the company has continuously used the greater portion of the land conveyed for the purposes mentioned, but because it has not built upon and occupied the twelve acres of the tract in controversy the contention is made that it was forfeited by virtue of the provision in the deed above quoted.

In determining the meaning of this clause in the deed, we can look to the circumstances under which the deed was made.

The land was conveyed to the company before it had constructed its road on the land to be used for depot grounds, right of way, side tracks and "Y," which it expected to construct in the future. The proof shows that the company, looking to the probable future needs of the road, purchased and paid for more land than it needed for immediate use, though not more than it would probably need in the future. Construing the language of the deed in the light of these circumstances, we think there was no forfeiture. The condition was complied with on the part of the company by constructing its railroad upon and across the land conveyed and putting so much of said land as its immediate needs required to use for depot grounds and side tracks, that being the greater part of the tract, and by holding the remainder for the future needs of its railroad; in the meantime not putting it to another or different use.

This land was not given to the company to secure the erection of shops or something of that kind. It was purchased and paid for by the company, which afterwards constructed its railroad as set out in the deed. If the construction of the road was a part of the consideration of the deed, the grantors have secured that advantage. They were not in any way interested in the construction of the "Y" or side tracks for which the company now wishes to use the land in controversy. The delay in constructing it did not operate to their injury, but, on the contrary, they were thus permitted to use and cultivate the land several years longer, and thus gained an advantage by the failure of the company to put the whole tract to immediate use.

Conditions subsequent are not favored, and must be strictly construed, and we see nothing in this deed that required that the whole tract should be at once used for railroad purposes. We think the ruling of the circuit judge on this point was correct, and the contention of appellant must be overruled.

The next question is raised by defendant's claim of title by adverse possession. On this point the circuit judge held that a vendor could not defeat the right of his vendee by adverse possession, and that the same rule would apply to the defendant who holds under the will of his father, one of the vendors. He therefore directed the jury to find for the company on the issue of adverse possession. Considered abstractly, this statement of the law as given by the trial judge was not correct. Though the continued possession of the land by the vendor after conveyance executed

is not, of itself, sufficient to show a holding adverse to the vendee, yet there is nothing in their relations which will prevent the vendor from acquiring a title by adverse possession. But before the vendor or those claiming under him can acquire title in that way against the vendee the intention to hold adversely must be manifested by some unequivocal act of hostility, such as to give notice to the vendee of the intention of the vendor to deny his right and hold adversely to him. Until this is shown, the statute does not commence to run. 1 Am. & Eng. Enc. Law (2d Ed.), 818, 819; Connor v. Bell, 152 Pa. St. 444; Paldi v. Paldi, 84 Mich. 346; Sherman v. Kane, 86 N. Y. 68.

The distinction between a vendor and a stranger in such a case relates to the character of evidence necessary to show that the possession was adverse. If the parties are strangers in title, possession and the exercise of acts of ownership are, in themselves, in the absence of explanatory evidence, proof that the holding is adverse; whereas if the vendor, after having executed deed, continues to remain in possession, the natural and reasonable inference, in the absence of evidence to the contrary, would be that he holds in recognition of the rights of the person to whom he has conveyed; it not being supposed, from mere acts of possession and ownership not inconsistent with the rights of the vendee, that the vendor intends to deny the title he has conveyed.

Now, in this case we see no evidence of any unequivocal act of hostility on the part of the defendant against the rights of the company, sufficient to put it upon notice of an adverse claim, until shortly before the commencement of this action, when the defendant, speaking to an agent of the company, denied that it owned a right of way across his field. This was notice to the company, but previous to that the evidence shows no act of defendant so inconsistent with the right of the company as to bring to it notice of an adverse claim. So far as the land in controversy is concerned, there was no change in possession after the execution of the deed to the company. While the company was using other portions of the tract conveyed, it had no immediate need for this part, and suffered it to remain within the enclosure of the grantor, and to be cultivated by him. After the death of the grantor, his son, the defendant, took possession, and continued to cultivate it, and to clear and put in cultivation a small portion that was in timber. The company had no right to farm the land, or to use it for other purposes than those named in the deed, and

until it was actually needed for the purposes of the railroad there was no reason why it should object to the use of it by defendant. This use of it did not injure the company. On the contrary, such cultivation, by removing timber, stumps and other obstructions, would naturally tend to its benefit. The possession of the vendor and his son was to the mutual benefit of the company and themselves, and was not in any way inconsistent with the rights of the company under the deed. We are therefore of the opinion that the circuit judge did not err in holding that there was no evidence of an adverse holding shown.

But counsel for defendant earnestly contends that the judgment should be reversed because, as he says, the instructions given by the trial judge prevented him from being heard on the facts. We cannot agree with this contention. Defendant admitted that his ancestor had conveyed this land to the railway company, and pleaded a forfeiture and adverse possession as defenses; but, as before stated, he showed no forfeiture nor any overt act of hostility to the title of the plaintiff calculated to put it upon notice of an adverse claim until only a few days before the action was commenced. There was, therefore, in our opinion no question of fact to submit to the jury, and it was totally immaterial what the form or language of the instruction was by which the trial judge directed a verdict for plaintiff. The evidence making it plain that a direction to find for the plaintiff was proper, whether that was accomplished by a simple direction to so find, or by an instruction which effected the same result, is quite unimportant, for no prejudice resulted to defendant from the form of the instruction. Courts do not sit to settle abstract questions of law, but to determine rights of parties involved in the litigation, and when it is clear that those rights have been correctly adjudicated by the trial court the judgment should be affirmed, notwithstanding there may have been formal defects in the charge to the jury. The substance of the instructions in this case was that there was no adverse holding, and this we think was correct.

Under the peculiar language of this deed, we are not sure that the company took more than an easement in the land, but a railroad right of way, though an easement, gives the company the right to exclusive possession, and it may maintain ejectment against one wrongfully holding possession of its right of way. *Tenn., etc., R. Co.* v. *East Ala. R. Co.* 75 Ala. 524.

Though it is doubtful whether the company had any right to recover for the value of the use and occupation of the land prior to the notice to quit, still that question does not seem to be raised or presented in the brief. On the whole case, we think the judgment should be affirmed, and it is so ordered.

## ON REHEARING.

Opinion delivered December 7, 1901.

WOOD, J.   The complaint alleges that plaintiff is the owner and entitled to the possession of the land in controversy; *that the land was conveyed to it for right of way and depot purposes by deed.* The deed is exhibited. The complaint then alleges *that the defendant is in possession of the land, and is unlawfully withholding same from the plaintiff.* The answer alleged that plaintiff had lost all right and title to the land by forfeiture for noncompliance with the condition subsequent contained in the deed, *i. e.,* that it should use the land for railroad purposes. It further alleged the adverse possession of defendant for more than seven years. The issue fairly and squarely raised by the complaint was whether the appellee was the owner and entitled to possession of the land in controversy under its deed, which, the complaint declared, conveyed the land *for right of way and depot purposes.* No more specific declaration was necessary to show that the appellee was suing for the land for railroad purposes. This issue was joined by the answer setting up that the plaintiff had forfeited its right under the deed, and by claiming adverse possession for the appellant; thus setting up affirmatively title in himself, and thereby denying title and the right of possession in the appellee for *any purpose.* In *Morgan* v. *Moore,* 3 Gray, 319, it is said: "The right to a fee, and the right to an easement in the same estate, are rights independent of each other, and may well subsist together, when vested in different persons. Each can maintain an action to vindicate and establish his right; the former to protect and enforce his seizin of the fee, the latter to prevent a disturbance of his easement." Giving force and meaning to every word and clause in the deed, the most reasonable construction is that deeds of the kind under consideration convey a perpetual easement in the land, or an easement in the nature of a fee. Neither the intention nor the effect of such instruments could be the conveyance of an estate in fee, but only an incorporeal heredita-

ment—an easement. *Robinson* v. *Missisquoi R. Co.* 59 Vt. 426;
*Flaten* v. *City of Moorehead,* 53 N. W. Rep. 807; *Barlow* v.
*Chicago, etc., Ry. Co.* 29 Iowa, 276; *Big Mountain Imp. Co.'s
Appeal,* 54 Pa. St. 361; *Blakely* v. *Chicago, Kan. & Neb. Ry. Co.*
46 Neb. 272; *Williams* v. *Western Union R. Co.* 50 Wis. 70.

The deed itself contains no limitations or conditions upon the
investment or enjoyment of the easement. The easement having
been acquired by deed, in the absence of statutory provisions, or
some stipulations in the deed itself, prescribing the time when the
grantee should exercise its right by constructing and using its
road, no mere nonuser could have the effect of defeating the right.
But adverse possession by the owner of the fee for the statutory
period would extinguish the right granted. Washburn, Serv. &
Eas. 717; Elliott on Railroads, § 931; *Kansas City & S. E. Ry.
Co.* v. *Kansas City S. W. Ry. Co.* 129 Mo. 62; *Roanoke Invest-
ment Co.* v. *Ry. Co.* 108 Mo. 50. In the case at bar mere nonuser
by the appellee is all that is claimed. No affirmative act of aban-
donment, such as misuser, conveyance for other uses, etc., is in-
sisted upon as a cause of forfeiture.

On the question of adverse possession we do not wish to add
to our former opinion. The possession of appellant was perfectly
consistent with that of appellee until he gave actual notice to
appellee of his adverse holding. From that moment appellee had
a cause of action to protect its right of easement; not before.

It follows, from what we have said, that the instructions of
the court were based upon an erroneous construction of the deed.
The law applicable to the issues raised by the pleadings and proof
was not given. The judgment for any amount beyond mere nomi-
nal damages was inconsistent with the views we have expressed,
because the proof showed that adverse possession did not commence
until just before the suit was instituted.

But, notwithstanding the erroneous views of the law
announced, it is obvious that, under a proper construction of the
deed, and a correct announcement of the law applicable to the
undisputed facts, the verdict and judgment could not have been
different as to appellee's right of possession. The judgment giving
appellee the right of possession for railroad purposes will there-
fore be affirmed, to that extent only. As to the damages, all possible
prejudice to appellant growing out of the judgment for damages
can be removed by a remittitur of all in excess of a merely nominal
amount. If the appellee will therefore remit, within ten days,

all except one dollar, the judgment for damages will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial as to the damage.

Opinion delivered January 11, 1902.

BUNN, C. J., (dissenting). I think an erroneous construction has been put upon the deed from the ancestor of appellant to the appellee company, and that that construction grows out of an idea that the company has only an ordinary easement in the land, with all the restrictions incident to such a holding.

A railroad being a *quasi* public institution, it is not clear but that it would be contrary to public policy for a railroad to purchase property, and take a deed therefor which might at any time be virtually nullified by conditions subsequent, to say nothing of conditions precedent.

The theory of the court seems to be that, in purchasing this land and accepting the deed in question therefor, the railroad company bought land, its purchase to take effect on the happening of an event in the future—its assertion of a desire to use it as for railroad purposes. The very purchase and sale between the parties was an assertion of the purposes of the deed, and the right to the possession of the railroad accrued *eo instanti* and *ipso facto,* without further claim, and the holding the possession by the grantor for the time was, of course, under and by permission of the grantee, and not that of tenant in common with the grantee, and on equal footing with it.

From all we can determine from the evidence, the railroad company paid the full price of the land, and, if there were other consideration than the sum named in the deed, it could only be in the nature of a benefit accruing to the grantor, or to accrue to him, by the construction of the "Y" track or other railroad appliances. It is to my mind evident that the delivery of the deed was a constructive delivery of the possession of the land, and the grantor, his heirs and assigns, could not controvert the title or right of possession of the grantee on this state of case alone. Now, if a reasonable time had elapsed, and the grantee had yet failed to make use of the land for railroad purposes, then, if any injury had accrued to the grantor or his heirs or assigns, he or they could bring suit for a forfeiture, and the land would revert on a successful termination of the suit. But the grantor in such case, or those holding under him, would probably have to show that the failure

to use the land for railroad purposes had caused an injury to him or them or to the public. At all events, the grantor, like any other tenant at will, must first deliver up possession before he can contest his landlord's title, and in such a case as the one at bar he must assume the affirmative, and show that the railroad has forfeited its grant.

If this be not the true theory, then the judgment of the circuit court should have been reversed outright; for, the complaint being based on the deed, if the latter was operative only on a contingency, like that of an assertion of the plaintiff of its present use for the land for railroad purposes, then the suit was prematurely brought, or else the plaintiff failed to make out its whole case in its complaint. In either case the circuit court's judgment as to the title was wrong if the opinion of this court be correct. No mere claim of adverse possession on the part of the grantor, or those holding under him, could justify a suit by the grantee before it had placed itself in a position to enjoy the possession of the land, for, under the ruling of the court, it had no right to the possession by reason of holding the deed merely.

Our statutes, inferentially, at least, give a construction to these right of way deeds which may throw light on the subject, for it is stated that when a railroad company and the owner of land over which the road is to run can not agree, a suit for condemnation may be instituted. The inference is that the agreement is that the owner shall convey just such right and interest in the land as will pass on the judgment in condemnation proceedings. Now, what is that interest? In the concluding words of section 2777: "Whereupon it shall and may be lawful for such railroad company to enter upon, and have the right of way over, such lands forever." In the one case the use of the land is ascertained and determined by the courts, and in the other it is conceded to be a legitimate and proper use by the grantor, and, more than that, that the railroad company has the right to acquire the lands by condemnation proceedings, and he choses to make his own terms of sale, rather than to entrust that matter to the courts and juries.

Now, I am of the opinion that the theory of the court that this deed grants an ordinary easement or a right with all the restrictions of a common-law easement is erroneous. From the very definition of easement, it appears that it is quite a different thing from the right acquired by a railroad for a right of way. And this is so patent to the courts that the most, or many, of them

believe, hold and define the right of a railroad thus acquiring land to be not an easement in fact, but in the nature of an easement—that is, possessing some of the elements and incidents of a technical easement, but not all. Holding these views, I think this case should be affirmed, or at least determined as originally decided by this court.