ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* FULKERSON.

Opinion delivered June 25, 1928.

*Wooldridge & Wooldridge, Chas. S. Jacobson, J. R. Turney* and *A. H. Kiskaddon,* for appellant.

*Coleman & Riddick,* for appellee.

SMITH, J. Appellant railway company has the record title to a right-of-way through the plantation owned by appellees, which plantation they inherited from their father, George F. Baucum. This right-of-way is 100 feet wide, 50 feet on each side of the center of the main track, but, for a distance of 1,600 feet opposite the depot at Baucum, the right-of-way south of the center of the track is 100 feet wide, making the total width of the right-of-way for this distance 150 feet. The right-of-way was acquired through two deeds from George F. Baucum, the last of which was executed in October, 1889.

The ordinary width of the right-of-way is 100 feet, and for a number of years the railway company maintained fences on each side of the track on the boundary lines of its right-of-way, and the fence through the Baucum land was a straight line, so that the strip of land here in controversy (50 by 1,600 feet) was inclosed as a part of the Baucum field and excluded from the remainder of the right-of-way. Baucum cultivated this strip as a part of his farm, and continued to do so until his death, which occurred twenty-five years before the institution of this suit, and since his death the strip of land has been cultivated by his heirs as a part of their field, and they testified that they did not know that the railway company claimed this land prior to the institution of this suit, and that they did at all times claim it.

Officers of the railway company testified that the railway company had at all times claimed this strip of land, and that all the maps and plats of their right-of-way showed their claim thereto, and that it was included in the railroad's real estate holdings as certified to the Interstate Commerce Commission for valuation of its property.

In 1903 the following contract was signed by an assistant engineer for the railway company and Mr. Baucum:

"Whereas, the St. Louis Southwestern Railway Company contemplates fencing such portions of its railway, where the danger to travel and loss to the residents and to the company on account of the killing of stock renders it advisable and necessary to do so, it is therefore agreed by and between the St. Louis Southwestern Railway Company, party of the first part, and G. F. Baucum, party of the second part, that, for and in consideration of the mutual advantages to be derived and received by both parties hereto, and one dollar in hand paid by the party of the first part to the party of the second part, the receipt whereof is hereby acknowledged, that the party of the first part will construct such private gates, road crossings or cattle guards upon the land occupied by the party of the second part as are shown by the diagram below; which arrangement is hereby agreed to by both parties, and will be followed and accepted strictly as a final settlement for their mutual advantage."

Attached to this agreement, as a part of it, was a plat of the railroad through Baucum's land, showing the location of the gates, road crossings and cattle guards on the Baucum farm, and this plat shows the right-of-way to be wider opposite the depot than it is elsewhere through the farm, although the plat does not indicate its width at any place.

Officers of the railway company testified that they assumed, without inquiry, that appellees were occupying the strip of land in subordination to the deed of their ancestor, and that no objection was made to its use for the reason that the railway company did not require the use of this land for railroad purposes. A no-fence district was organized, at a date not given, when all fences in the district were removed, and since that time no fences had been maintained along the right-of-way therein. On April 1, 1925, the railway company exe-

cuted a lease to a part of this strip to one Kohler, and when appellees asked Kohler to pay them the rent, the railway company inclosed with a fence, as a part of its right-of-way, the land in question, and when appellees removed the fence this suit was brought.

Appellees testified that they did not know that their father had ever conveyed the strip in question to the railway company, and that their father had at all times cultivated it as a part of his field, and that they had done so since his death under a continuous claim of ownership.

Upon this testimony the court below decreed that appellees were the owners of the land in question, and dismissed the complaint, and this appeal is from that decree.

As appears from the facts stated, the question presented is one of fact, that fact being whether appellees have acquired title by adverse possession to land which their ancestor had conveyed.

The law of the case appears to be well settled. In the case of *Graham* v. *St. Louis, I. M. & Sou. Ry. Co.*, 69 Ark. 562, 65 S. W. 1048, which is somewhat similar under the facts, Mr. Justice RIDDICK said:

"Though the continued possession of the land by the vendor after conveyance executed is not, of itself, sufficient to show a holding adverse to the vendee, yet there is nothing in their relations which will prevent the vendor from acquiring a title by adverse possession. But, before the vendor or those claiming under him can acquire title in that way against the vendee, the intention to hold adversely must be manifested by some unequivocal act of hostility, such as to give notice to the vendee of the intention of the vendor to deny his right and hold adversely to him. Until this is shown, the statute does not commence to run. 1 Am. & Eng. Enc. Law (2d ed.), 818, 819; *Connor* v. *Bell,* 152 Pa. St. 444 (25 Atl. 802); *Paldi* v. *Paldi,* 84 Mich. 346 (47 N. W. 5); *Sherman* v. *Kane,* 86 N. Y. 68. The distinction between a vendor and a stranger in such a case relates to the character of evidence necessary to show that the posses-

sion was adverse. If the parties are strangers in title, possession and the exercise of acts of ownership are, in themselves, in the absence of explanatory evidence, proof that the holding is adverse; whereas if the vendor, after having executed deed, continues to remain in possession, the natural and reasonable inference, in the absence of evidence to the contrary, would be that he holds in recognition of the rights of the person to whom he has conveyed; it not being supposed, from mere acts of possession and ownership not inconsistent with the rights of the vendee, that the vendor intends to deny the title he has conveyed.''

While there is a presumption that the grantor who remains in possession after the execution of his deed does so in subordination to the title which he has conveyed, this is not a continuing, enduring presumption. On the contrary, the probative value of this presumption diminishes with the lapse of time, and may, if the possession of the grantor be long enough continued, cease to exist. In the case of *Pullen* v. *Cowan*, 163 Ark. 507, 260 S. W. 401, it was held (to quote a syllabus) that ''retention of possession of land by a grantor, after conveyance thereof, is presumed to be for the grantee, but such presumption will not extend over an unreasonable length of time.'' See also *American Bldg. & Loan Assn.* v. *Warren*, 101 Ark. 163, 141 S. W. 765.

We are of the opinion that the court below was warranted in finding the fact to be that appellees' possession had been of such a character as to rebut the presumption that they were occupying the land in subordination to the grant of their ancestor, and that the railway company was charged with notice of that fact.

Appellees and their ancestor held continuous possession of the land for thirty-nine years, during all of which time they continuously cultivated it as a part of their field, and during most of this time the railway company had itself, by building its fence, included the land in the farm and had excluded it from its right-of-way. It is true that, fourteen years after the execution of the deed

conveying the land to the railway company, Baucum signed an agreement to which a plat was attached showing that the right-of-way through the farm was not of a uniform width, but was wider opposite the depot, but this plat did not purport to show the width of the right-of-way at any place, and was not executed for that purpose. The purpose of its execution was to locate crossings, cattle guards and gates, and all of these were within the hundred-foot right-of-way, and the gates were in a fence fifty feet from the center of the right-of-way. Moreover, Baucum had been dead twenty-five years after the execution of this agreement before the institution of this suit, and during all this time appellees were in possession of the land, cultivating it as a part of their farm.

Under these facts we think the possession of appellees had ripened into title to the disputed strip of land, and the decree of the court below must be affirmed, and it is so ordered.

KIRBY, J., not participating.