STEELE *v.* STEELE.

4-8673                                          216 S. W. 2d 875

Opinion delivered January 31, 1949.

*Hal B. Mixon,* for appellant.

*Ward & Ward* and *Mann & McCulloch,* for appellee.

SMITH, J. In the period from 1890 to 1900 two negroes, Joseph Steele and Nancy Steele Butler, brother and sister, owning adjoining farms, lived together in Lee County. Their relationship was close and affectionate. Nancy, referred to by the witnesses as Aunt Nancy, on account of her age, owned a forty-acre farm, and her brother's farm consisted of forty-two acres. It is this latter which is the subject matter of this litigation.

On November 17, 1900, Joseph executed a deed to his farm to Nancy, his sister, for the recited consideration of $600, yet notwithstanding this deed, the uncontradicted testimony is that Joseph continued to remain on his farm until his death in 1940. During this time he exercised all the acts of ownership, including the payment of the taxes, and was generally believed to be the owner and a number of his friends and neighbors testified that he always referred to the land as his farm. There are irreconcilable conflicts in the testimony as to just what Joseph said about his ownership. While all the testimony is that he referred to the land as his own, the more explicit testimony of some of his more intimate friends was that he said it was his for life.

It is undisputed that Joseph conveyed the land to his sister, but it is also undisputed that Joseph remained on the land after executing the deed, for a period of forty years, during all of which time he occupied the land as his own without payment of rent and he paid the taxes thereon.

In 1921, which was twenty-one years after executing the deed, Joseph, who was then an old man, married appellee, who was forty-one years his junior, and after this marriage he and Donnie, his wife, lived on the land in question. Prior to that Joseph had lived with his sister, Aunt Nancy, on her land.

Donnie, Joseph's widow, offered this explanation of the deed. Joseph owed a debt which he claimed to have twice paid, but it was demanded of him that he pay the debt a third time, and he was advised to execute a "schedule deed," which was the deed above mentioned. It does not appear that Joseph was ever sued for this debt or that the validity of his deed to Aunt Nancy was ever questioned as having been executed in fraud of any creditor and there is no testimony that Joseph himself ever raised with Aunt Nancy the question of its validity.

Aunt Nancy made no effort to regain possession of the land upon her brother's death, and Donnie, Joseph's widow, remained in possession until Aunt Nancy died, a period of about four years. After Aunt Nancy's death this suit was brought by her nephews, who claimed title not only as heirs at law of Aunt Nancy, but also under her will.

It is conceded that the continued possession of Joseph and that of his widow after his death, was of such duration as would ordinarily overcome the presumption that Joseph had remained in possession permissively and in subordination of his conveyance, but it is insisted that that presumption of adverse possession was overcome by the testimony in the case.

It was said in the case of *St. Louis S. W. Ry. Co.* v. *Fulkerson,* 177 Ark. 723, 7 S. W. 2d 789, that: "While there is a presumption that the grantor who remains in possession after the execution of his deed does so in subordination to the title which he has conveyed, this is not a continuing, enduring presumption. On the contrary, the probative value of this presumption diminishes with the lapse of time and may if the possession of the grantor be long enough continued, cease to exist."

In the case of *Graham* v. *St. Louis, I. M. & So. Ry. Co.,* 69 Ark. 562, 65 S. W. 1048, 66 S. W. 344, Judge RIDDICK said: "Though the continued possession of the land by the vendor after conveyance executed is not, of itself, sufficient to show a holding adverse to the vendee, yet there is nothing in their relations which will prevent the vendor from acquiring a title by adverse possession. But before the vendor or those claiming under him can acquire title in that way against the vendee the intention to hold adversely must be manifested by some unequivocal act of hostility, such as to give notice to the vendee of the intention of the vendor to deny his right and hold adversely to him. Until this is shown, the statute does not commence to run. 1 Am. & Eng. Enc. Law (2d Ed.) 818, 819; *Connor* v. *Bell,* 152 Pa. St. 444, 25 Atl. 802; *Paldi* v. *Paldi,* 84 Mich. 346, 47 N. W. 510; *Sherman* v. *Kane,* 86 N. Y. 57."

There is no testimony to the effect that Joseph ever apprized his sister that he was holding adversely to her. Had he done so and she had been willing for him to acquire the title by adverse possession she could, and in all probability would have reconveyed the land to him, if she was in fact willing for him to acquire the title.

It must be conceded that there is testimony to the effect that Joseph and Donnie did claim adversely to Aunt Nancy, of which fact she must have had knowledge, but the chancellor found to the contrary and we are unable to say that finding is contrary to the preponderance of the testimony.

One Tarpley, a white man who testified that his only interest in the lawsuit was "to see that Aunt Nancy's and Uncle Joe's will is carried out," testified that he was born and reared on an adjoining farm and that he probably "knew more about Uncle Joe's and Aunt Nancy's business than any other person white or colored in that community." He testified that they advised with him about their business affairs and that Joseph had said to him, "Now this place I am living on as you know is already deeded to Nannie, and I am not going to change that. I am going to buy another place and deed that to

Donnie,'' his wife, appellant here. He further testified that shortly before Aunt Nancy executed her will she said to him, ''As long as I and Joe live I want him to have control of it (the land in litigation) that when me and him both die I want the property to stay in the Steele (her own) family.''

Aunt Nancy's will, which was duly probated, corroborated this testimony. A paragraph of this will reads as follows: ''To my brother, Joe Steele, in memory of his constant kindness and thoughtful provision for me, I give and bequeath all of my lands owned by me at the time of my death wherever situated for and during his natural life only, and at his death the remainder to my nephews, Willie Steele and Sidney Steele in fee simple forever.''

It will be observed that this will devised not merely my farm, but also ''all of my lands owned by me at the time of my death wherever situated for and during his natural life only, and at his death the remainder to my nephews, Willie Steele and Sidney Steele, in fee simple forever.''

This will conformed to the relationship under which, according to the testimony of witness, Tarpley, Joseph had occupied the land which he had conveyed to Aunt Nancy, and in addition the testatrix requested her nephews to allow her brother Joe to use her personal property during his natural life if he should desire to do so.

After Aunt Nancy's death her nephews and devisees brought suit in ejectment against Donnie, then in possession, to recover the land, basing the suit upon the record title to the land, and upon the will of their aunt. Donnie filed an answer in which she alleged that Joseph, her husband, had acquired title by adverse possession and that she, as Joseph's widow, had acquired dower and homestead rights in the land. She did not allege or plead laches, which is an affirmative defense, and does not urge that defense in her briefs. It was held in the case of *Dover Merc. Co.* v. *Dover*, 187 Ark. 859, 62 S. W. 2d 971, to quote a headnote that: ''The doctrine of laches cannot

be invoked on appeal where it was not pleaded in the trial court.'' Had that question been invoked in the case, a counter plea of estoppel to raise the question might also have arisen as Joseph took no action to cancel his deed and Aunt Nancy, the grantee therein, is now dead and cannot explain the relationship with her brother or any agreement under which she allowed him to continue in possession.

In addition to the plea of title by adverse possession, appellant, Donnie, alleged that her husband had acquired title to the land under a deed from the St. Francis Levee District to her husband, based upon a sale of the land to the Levee District for the nonpayment of 1938 Levee District taxes due thereon. The witness, Tarpley, testified that Aunt Nancy reported to him that Joseph had allowed the land to be sold for taxes, and that she lacked $12 of having enough money to enable him to redeem it, and that he loaned her that sum for that purpose. The redemption was effected through the deed from the Levee District. According to the testimony on appellees' behalf a condition upon which Joseph was allowed to occupy the land was that he had agreed to pay all taxès against it. Several witnesses testified that Joseph himself had stated that this was one of the conditions of his occupancy. If this is true, and the decree awarding possession to appellees imputes the finding that it is, then Joseph did not acquire title by purchasing the land from the Levee District, based upon the nonpayment of taxes which he was under obligation to pay. The case of *Mann and Campbell* v. *Walker*, 202 Ark. 311, 149 S. W. 2d 935, is conclusive of that question.

Upon the allegation contained in the answer that Joseph had acquired title by his deed from the Levee District, a motion was filed that the cause be transferred to the chancery court, which was done, and at the trial the insistence was that Joseph had purchased as trustee, and that his deed was a mere redemption.

This deed is recited in the decree as a part of the testimony on which the cause was heard and the effect of the decree is to grant this equitable relief. Appellant, if

she wished to raise the question of laches, should have raised it when this equitable relief was asked. .

While there is testimony which would have supported the finding that Joseph had acquired title by adverse possession, we are unable to say that the chancellor's finding to the contrary is against the preponderance of the evidence and it must therefore be affirmed, and it is so ordered.

MILLWEE and GEO. ROSE SMITH, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. Justice MILL-WEE and I think that the preponderance of the evidence rebutted the presumption that Joe Steele's possession was subordinate to his sister's title. Nancy Butler's failure to assert her ownership during the four years between her brother's death and her own is especially significant. The appellees' most convincing witness, Clarence Tarpley, quoted Joe Steele as having said that he had deeded his place to Nancy Butler and that she had deeded hers to him—both to keep up the taxes. No deed from Nancy to Joe is shown. If she had brought suit during the four years following Joe's death she would have been compelled to introduce oral evidence to overcome the effect of Joe's continued possession for forty years. Had she relied on Tarpley's testimony she would have been required to do equity by recognizing the interest of Joe's widow in either his property or hers. The other evidence being evenly balanced, we think that Nancy Butler's inaction should be recognized as the decisive factor in appellant's favor.