HORTON *v.* MCLERKIN.

5-545 275 S. W. 2d 10

Opinion delivered February 7, 1955.

*Rhine & Rhine,* for appellant.

*Coleman & Mayes,* for appellee.

ED. F. MCFADDIN, Justice. This appeal involves a parcel of land in the City of Paragould. McLerkin, as plaintiff, brought suit to restrain Horton, as defendant, from trespassing. Horton, by answer and cross-complaint, alleged title to, and ownership of, the disputed strip, being a quadrilateral 6 feet wide, East and West on the North end, 8 feet wide, East and West on the South end, and being 122 feet long, North and South. Against Horton's claim of ownership, McLerkin pleaded adverse possession. The Chancellor heard the evidence *ore tenus,* and sustained McLerkin's plea of adverse possession. On appeal two points are urged. They relate to: (a) the nature of the suit; and (b) sufficiency of the evidence to sustain adverse possession.

I. *The Nature of the Suit.* Horton claims that the decree is beyond the scope of the complaint; but such claim overlooks the fact that in his cross-complaint, Horton described by *metes and bounds* the strip here in dis-

pute and prayed that he be awarded possession of it. To that cross-complaint, McLerkin pleaded adverse possession. Thus Horton, by his own cross-complaint, enlarged the issues, and cannot now be heard to say that the decree rendered is broader than the original complaint. *Dean* v. *Freeze,* 213 Ark. 264, 209 S. W. 2d 876; *Grytbak* v. *Grytbak,* 216 Ark. 674, 227 S. W. 2d 633; and *Ligon* v. *Milholland,* 216 Ark. 231, 224 S. W. 2d 825.

II. *Sufficiency of the Evidence to Sustain McLerkin's Plea of Adverse Possession.* The evidence disclosed that Lot 11, Block 1 of Thorn's Addition is a rectangle, 180 feet East and West by 172 feet North and South, and is situated immediately to the East of Lot 10. McLerkin was the owner of both lots; and in January, 1944, he conveyed to Reynolds the East 140 feet of the North 122 feet of Lot 11: [1] thus retaining for himself the West 40 feet of Lot 11 and all of Lot 10. In the early spring of 1944, McLerkin, without notice to Reynolds, erected a fence on what McLerkin measured to be the dividing line between the property then owned by Reynolds and him. McLerkin has maintained that fence as the dividing line at all times since its erection in the early spring of 1944. It was shown by the evidence that McLerkin erected the fence too far to the East, so that the disputed strip is within McLerkin's enclosure, even though it is within the limits of the property conveyed by him to Reynolds. The defendant, Horton, claims by mesne conveyances from Reynolds. Thus the question is whether McLerkin should prevail on his plea of seven years adverse possession, in spite of the fact that he conveyed the disputed strip a few months before he erected the fence which initiated his claim of adverse possession against his own grantee.

At the outset appellant cites and relies on those cases which hold that when the grantor remains in possession of a part of the premises conveyed, he is presumed to hold in subordination to the title conveyed, unless there is evidence of a contrary intention. Some of

---

[1] The South 50 feet of Lot 11 is not involved in this suit in any way.

the cases recognizing this rule are: *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. Rep. 35; *Graham* v. *St. L. Ry. Co.,* 69 Ark. 562, 65 S. W. 1048; and *Anderson* v. *Burford,* 209 Ark. 452, 190 S. W. 2d 961. But in the case at bar, the evidence shows that at the time of McLerkin's deed to Reynolds in January, 1944, all of the property conveyed was vacant and open land. It was not until several months after the conveyance to Reynolds that McLerkin constructed the fence, here involved, and became the actual user of all the land west of the fence.[2] These facts bring the case at bar within the language of Mr. Justice FRAUENTHAL in *American B. & L. Ass'n* v. *Warren,* 101 Ark. 163, 141 S. W. 765, wherein it is stated:

"If the grantor went into possession of the property after the execution of the deed, then the rule, that the presumption arises that he holds such possession by sufferance only of the grantee, will not obtain. Such presumption only arises where the grantor was at the time of the execution of the deed in actual possession of the alienated property, and continues in possession thereof. . . . When the grantor takes actual possession of the property at a time subsequent to the execution of the deed by him, the possession which he thus obtains is apart from the grant which he has made, and becomes like that of a third person not a privy to the conveyance. . . ."

We come then to the point most vigorously urged by appellant, which is, that it was McLerkin's intention to hold only to the true line, and not to the fence line. This is an effort by appellant to bring the case at bar within the quotation from *Goodwin* v. *Garibaldi,* 83 Ark. 74, 102 S. W. 706, which reads:

"When a land-owner, through mistake as to his boundary line, takes possession of land of an adjacent owner, intending to claim only to the true boundary, such possession is not adverse, and, though continued for the statutory period, does not divest title. . . ."

---

[2] That McLerkin has all the time since the Spring of 1944 remained in possession of the land west of the fence, is abundantly shown; and this suit was filed on March 24, 1952.

This rule, as quoted, has been recognized and applied in many cases, some of the recent of which are: *Martin* v. *Winston*, 209 Ark. 464, 190 S. W. 2d 962; and *Ogle* v. *Hodge*, 217 Ark. 913, 234 S. W. 2d 24.

The pertinent issue is whether McLerkin only intended to claim to the *true line*, or whether he intended to claim to the *fence line* regardless of any mistake in the boundary. (See *Davis* v. *Wright*, 220 Ark. 743, 249 S. W. 2d 979). McLerkin was asked at least five times whether he intended to hold to the *true line* or the *fence line*; and he repeatedly said that he intended to hold to the *fence line*. Here are some of the excerpts from his testimony:

"Q. You weren't claiming any of that 140 feet?

"A. I was claiming to the fence.

"Q. Were you claiming any part of the 140 feet you set out in your deed?

"A. I was claiming over to the fence.

"Q. You put the fence to mark the 140-foot line?

"A. I put the fence to separate mine and Mr. Reynolds."

Finally the Chancellor interrogated Mr. McLerkin on that point, and here is the excerpt from that testimony:

"Q. You say you put that fence up there in March or April, 1944?

"A. I did, yes, sir.

"Q. Have you been in possession of and have you used everything west of that fence since that time?

"A. I have.

"Q. All right, sir. Now, are you claiming and have you been claiming ownership of 110 feet, including lot 10, wherever that might be, or are you claiming and have been claiming everything west of the fence?

"A. I have been claiming everything west of the fence."

The Chancellor heard Mr. McLerkin's testimony and observed his demeanor on the witness stand, and concluded that Mr. McLerkin had all the time claimed and held to the fence line. We cannot say that the Chancellor's finding is against the preponderance of the evidence on this matter of adverse possession.

Therefore, the decree is affirmed.