AMERICAN BUILDING & LOAN ASSOCIATION OF LITTLE ROCK

*v.* WARREN.

Opinion delivered November 27, 1911.

1.  ADVERSE POSSESSION — POSSESSION AS NOTICE. — Actual possession is evidence of some title in the possessor, and puts a subsequent purchaser or mortgagee on notice as to the title which the occupant holds or claims in the property.   (Page 168.)

2.  SAME—GRANTOR'S POSSESSION AS NOTICE.—The general rule that a grantor's possession is presumed to be in subordination to his grantee is inapplicable where his possession is continued for a long time after execution of the deed.   (Page 169.)

3.  SAME—GRANTOR'S POSSESSION AS NOTICE.—The actual possession of a grantor is sufficient notice to all third persons dealing with the property to put them upon inquiry as to whether such possession has continued for a short or a long time.   (Page 170.)

4.  SAME—GRANTOR'S POSSESSION AS NOTICE.—Where a grantor of land went into possession thereof after execution of his deed, the rule that he will be presumed to hold by sufferance of the grantee will not obtain. (Page 170.)

5.  SAME—GRANTOR'S POSSESSION AS NOTICE.—Where a landowner conveyed the land in September, 1904, and thereafter went into possession of the land in December following and remained in possession until the following June, when the grantee mortgaged the property to another, the grantor's possession was sufficient to put the mortgagee upon notice of the grantor's rights and interests.    (Page 171.)

Appeal from Lafayette Chancery Court; *James M. Barker*, Chancellor; affirmed.

*J. W. House* and *J. W. House, Jr.*, for appellant.

1.  The proof shows that Smith was the agent of the Building & Loan Association only for the purpose of collecting dues of existing mortgagees. He was never held out as being the agent for any other purpose, and Warren should have inquired into Smith's authority. 114 Am. St. Rep. 801; 88 N. Y. 925, 37 S. E. 555. Smith's taking title in himself to transfer to the association later was entirely outside the scope of his duty to the association, and the effect of his doing so was to constitute him the agent of Warren to negotiate the mortgage. 24 So. 707; 154 U. S. 542; 28 Pac. 1060; 39 N. J. Eq. 203; 17 So. 23; 16 So. 888; 14 So. 656.

2.  Appellant had no notice sufficient to put it on inquiry.

*Henry Moore, Jr.*, for appellee.

1.  There is no testimony whatever that Smith was the agent of Warren, but, on the contrary, appellant's own testimony shows that Smith acted as the local agent of the Association to collect dues from the various members at Lewisville. It is settled in this State that the findings of a chancellor will be sustained unless clearly against the preponderance of the testimony. 77 Ark. 314; 91 Ark. 280.

2.  Warren being in actual, visible possession of the lots when appellant took its mortgage from Smith, such possession was notice to appellant of his claim and title to the property; and, appellant having failed to inquire into the nature of Warren's possession, it must suffer the loss occasioned by Smith's bad faith. 66 Ark. 167; 77 Ark. 25; 90 Ark. 149. Possession by a vendor of the property after its conveyance gives notice to the world of his claim of title, the same as would the possession of a third party. 54 Ark. 280; 48 Ark. 411; 23 Am. & Eng. Enc. of L. (2 ed.) 502; 55 Ark. 321.

FRAUENTHAL, J.  This was an action instituted by the American Building & Loan Association of Little Rock, the plaintiff below, to foreclose a mortgage on three lots in Lewisville, Arkansas.  The suit was brought against J. O. Smith, the mortgagor, and also against J. H. Warren, the occupant of the property.  The defendant Smith made no defense, but the defendant Warren resisted the suit upon the ground that he was the equitable owner of the lots under a written contract of purchase from Smith, executed prior to the mortgage.

It appears from the testimony that J. H. Warren purchased the lots on June 13, 1904, from one S. B. McGill, for the sum of $250.  At that time the lots were vacant.  In September, 1904, being desirous of building a residence upon said lots, Warren went to the defendant Smith to secure a loan of money for that purpose.  The plaintiff was located at Little Rock, Ark., and was engaged in the business of loaning money to the holders of shares of stock in its association upon real estate mortgages, and the defendant Smith was its local agent at Lewisville, with authority to collect dues from its shareholders resident at that place.  Smith was also cashier of a bank at Lewisville.  When Warren applied to him for a loan, he inquired of Smith whether he represented the plaintiff and could secure the loan from it.  Smith told him that he could not do so at that time, for the reason that plaintiff was not then loaning money at Lewisville.  He agreed, however, that he would advance the money himself, and build the house for Warren, and that he would write the association for Warren, and at a later date would make arrangements whereby Warren could take out stock in the plaintiff association and secure the money from it, and with the money thus obtained repay Smith the money advanced by him to build the house.  In order to get Smith to build the house, and to secure him for the money thus expended, Warren executed a warranty deed to Smith on September 7, 1904, for the above lots, and the consideration therein named was one dollar.  At the same time Smith executed to Warren a written contract whereby he agreed to build the house according to agreed plans and specifications, and upon the payment of the estimated cost thereof to convey the lots and house to Warren.  The estimated cost of the house was $2,150, and Warren executed for this sum his several

notes to Smith for $25 each, payable monthly thereafter. The house was completed on December 30, 1904, on which day Warren went into the possession thereof, and has remained in the exclusive possession thereof continuously since that date.

On June 9, 1905, the defendant Smith borrowed from plaintiff the sum of $1,000, and on that day executed to it a mortgage on the three lots, in order to secure said loan. He furnished to plaintiff an abstract of title showing said deed from Warren to himself, which had been duly recorded soon after its execution. The written contract executed by Smith to Warren to convey to him the property on payment of said notes was not placed on record until March, 1909. The testimony tends to prove that Warren had no actual knowledge or notice of said mortgage executed by Smith on said lots to the plaintiff until in February, 1909. At that time an insurance agent cancelled his policy of fire insurance on the house, and by reason of this he learned of said mortgage. In the meanwhile he had paid said notes which had been executed by him to Smith for the property promptly each month as the same matured. Some of them he paid direct to Smith. Later, and probably before he gave the mortgage on the property, Smith sold and assigned all the remaining notes to a third person, who thereby became the *bona fide* holder thereof for value and before maturity. Thereupon Warren paid such of the remaining notes as matured to the assignee of Smith upon their presentation to him by the agent of the assignee.

Upon the hearing of the cause, the chancellor made findings in favor of Warren, and entered a decree in his favor.

It is urged by counsel for plaintiff that the decree entered by the chancellor is erroneous:

1. Because it is claimed that the evidence shows that Smith executed the mortgage to plaintiff as the agent of and in pursuance of authority from Warren.

2. Because plaintiff had no notice, either actual or constructive, sufficient to put it upon inquiry as to the alleged rights or interests of Warren in the property.

The first contention thus made, we think, is purely one of fact. It appears that in 1904, when Warren applied to Smith for a loan upon the lots, he inquired of him whether he could secure the loan from the plaintiff. Smith replied that

he could not get him into the plaintiff's association at that time so as to obtain the loan, and told him that he would build the house for him and put Warren in the plaintiff's association later. It is urged by counsel for plaintiff that the testimony shows that Warren conveyed the lots to Smith with the understanding that Smith would build the house for Warren, and subsequently would mortgage the lots to plaintiff, and with the money thus borrowed from plaintiff pay off to himself the money advanced by him to build the house, and that thereby Warren in effect authorized Smith to mortgage the property to plaintiff.

We are of the opinion, however, that the chancellor was warranted in finding from the testimony that when Warren inquired of Smith as to whether he could secure the money from plaintiff, and was informed that he could not do so at that time, it was then agreed and understood that Smith would himself build the house for an agreed sum, without any reference to or reliance upon obtaining a loan from the plaintiff. It was then, in pursuance of such agreement, that Warren executed the deed to Smith for the nominal consideration of one dollar, and also executed the notes aggregating the agreed cost of the house; and at the same time Smith executed the written contract whereby he agreed to convey the property back to Warren upon the payment of said notes. This all occurred on September 7, 1904; and in pursuance of that agreement Smith built the house, which was completed by December 30, 1904. If it was also talked of or understood between Warren and Smith that at a later date a loan would be obtained from the plaintiff and a mortgage given on the lots to secure such loan, then we are of the opinion that the chancellor was warranted in finding that under such agreement the loan was to be obtained from the plaintiff by Warren, and not by Smith, and that the mortgage and bond, or note, to the plaintiff was to be given by Warren and not by Smith. According to the manner and custom of the plaintiff in doing its business, the person obtaining the loan from it would be required to take stock in plaintiff's association; and under the testimony we think that it was only understood that Warren was the party who later would take such stock, and not Smith.

Furthermore, if by such mortgage to plaintiff Warren was

to obtain from it the money, then it would not be reasonable to presume that the parties intended that Smith would, for the sole benefit of Warren and without profit to himself, execute to the plaintiff a note and mortgage and thus impose upon himself a personal liability to the plaintiff which would continue for a long time, inasmuch as the loan would be repaid to the plaintiff association only in installments continuing to the maturity of the stock taken out. But we think that the testimony of Warren, the only witness to the transaction who testified in the case, warranted the chancellor in finding that he did not authorize or understand that Smith would execute a mortgage on the property to the plaintiff, or that it was necessary for Smith to do so, as he was then thought to be in excellent financial condition. The reasonable conclusion to draw from Warren's testimony is that the parties only understood that if, later on, the plaintiff concluded to lend the money, then Warren would take out the stock in the plaintiff association and borrow the money he desired from it, securing the loan by executing a mortgage on the property, and with the money thus obtained he would pay to Smith all the notes which he had executed to him. This was the finding of the chancellor, and we can not say that it was contrary to the clear preponderance of the evidence. His finding in this regard therefore should not be disturbed. It follows that Smith had no authority given-to him by Warren, either expressly or by implication, to mortgage the property to the plaintiff association.

It is contended that plaintiff had no notice of the rights or equities of Warren in the property at the time Smith executed to it the mortgage, and for this reason that its mortgage should be declared superior to any rights Warren may have in the property. This contention is made upon the ground that the written contract of defeasance executed by Smith to Warren was not recorded at the time the mortgage was executed, and that plaintiff had no actual notice of Warren's interest in the property. But on June 9, 1905, when the mortgage was executed, Warren was in the actual and exclusive possession of the property, and was residing with his family in the house thereon. He had been continuously in possession of it in this manner ever since December 30, 1904, and continued in that possession continuously to the trial of this case.

Ordinarily, possession by a person under a contract of purchase, although unrecorded, is notice of his equitable rights and interests in the property. Actual possession is evidence of some title in the possessor, and puts the subsequent purchaser or mortgagee on notice as to the title which the occupant holds or claims in the property. Generally, actual, visible and exclusive possession is notice to the world of the title and interest of the possessor in the property, and it is incumbent upon the subsequent purchaser or mortgagee to make diligent inquiry to learn the nature of the interest and claim of such possessor; and if he does not do so, notice thereof will be imputed to him. *Hamilton* v. *Fowlkes*, 16 Ark. 340; *Shinn* v. *Taylor*, 28 Ark. 523; *Rockafellow* v. *Oliver*, 41 Ark. 169; *Atkinson* v. *Ward*, 47 Ark. 533; *Strauss* v. *White*, 66 Ark. 167; *Thalheimer* v. *Lockert*, 76 Ark. 25; *Sproull* v. *Miles*, 82 Ark. 455; *Hughes Brothers* v. *Redus*, 90 Ark. 149; 1 Jones on Mortgages, (6 ed.) § 589.

But it is urged that this rule does not obtain in cases where the grantor continues in possession of the property at the time of the grant and after the execution of the conveyance. It is urged that in such cases the law presumes that the grantor holds in subordination to the title which he has conveyed, and not in opposition to it; and that third persons dealing with property may presume that the possession of the grantor is only by sufferance of the grantee. *Graham* v. *St. Louis, I. M. & S. Ry. Co.*, 69 Ark. 562; *El Dorado* v. *Ritchie Grocer Co.*, 84 Ark. 52; *Suttgart* v. *John*, 85 Ark. 526.

This is an exception to the above general rule that possession of property is notice of the rights and interests of the possessor therein. But this exception has also its qualification. The rule relative to the effect which the possession by the grantor after conveyance made by him will have in giving notice of any rights or equities he may possess in the property, which this court has adopted, has been announced in the case of *Turman* v. *Bell*, 54 Ark. 273. In that case it is said: "If the possession has continued after the making of the deed but a short time, it might be reasonably referred to the sufferance of the grantee; but where it was long continued, it would much more strongly imply a right in the occupant, and the implication would be sufficient to cast upon strangers the duty of inquiry."

And in the case of *Morgan* v. *McCuin*, 96 Ark. 512, it was said that this court still adhered to the rule there announced.   1 Jones on Mortgages (6 ed.) § 598.

Whether such possession of the grantor has been long continued within the purview of this rule must necessarily depend to a great extent upon the nature of the property, its use, and the circumstances of each case.   But whether such possession of the grantor be for a short or a long time after the execution of the deed, the actual possession of the grantor is sufficient notice to all third persons dealing with the property to put them upon inquiry as to whether such possession has continued for a short or a long time.   It is sufficient to put third persons upon inquiry as to when such possession of the grantor began and the length of its continuance.   Actual possession is therefore sufficient to give notice to subsequent purchasers and mortgagees as to whether the grantor was and continued in possession of the property at the time he made the deed to the grantee, or whether he took possession after the execution of such deed.   If the grantor went into possession of the property after the execution of the deed, then the rule that the presumption arises that he holds such possession by sufferance only of the grantee will not obtain.   Such presumption only arises where the grantor was at the time of the execution of the deed in actual possession of the alienated property, and continues in possession thereof.   His acts of conveyance and of possession are contemporaneous, and it will be presumed that the two are not inconsistent, and that the possession is therefore in subordination to the grant.   On this account, it is held that when the grantor retains and continues in actual possession at and after the execution of the conveyance, he does so, not in opposition to the title he has made to the grantee, but in recognition of that title and by sufferance of the grantee. The reason for this presumption is that, by his warranty deed, the grantor declares to all who may deal with the property that he has parted with all his rights to the title and every interest therein.   Such declaration, however, can only refer to his title and interest at the time of the execution of such deed, and can not be considered to refer to a title subsequently acquired by him or an interest subsequently obtained.   When the grantor takes actual possession of the property at a time

subsequent to the execution of the deed by him, the possession which he thus obtains is apart from the grant which he has made, and becomes like that of a third person not a privy to the conveyance. His after acquired possession is not referable to the deed executed by him. Such after-acquired possession will be referable rather to another and distinct contract made subsequently with the grantee, or to a right acquired thereafter and adverse to him.

We conclude, then, that the possession of property is sufficient to put all persons on notice to inquire as to the time when such possession was obtained, and the length of its continuance, whether such possession be that of the grantor or of a stranger. If the possession is that of the grantor, then all third persons are put upon inquiry to learn whether such possession existed at and continued from the date of the grant, and whether it continued thereafter for a short or a long time. If the grantor continues in possession at the time of the grant and for a short time only thereafter, then third parties are warranted in referring his continuous possession to the sufferance of the grantee; but if the grantor was not in possession of the property at the time of the grant, and obtained such possession thereafter, or if the grantor continues in possession at the time of the grant and for a long time thereafter, then all third persons are put upon notice to inquire as to the nature and extent of the rights and interests which such possessor may have or claim in the property, and are chargeable with notice of such rights or claims which a diligent inquiry would have disclosed.

In the case at bar, the defendant Warren conveyed the lots to Smith on September 7, 1904, for the nominal consideration of one dollar. At that time the lots were not in the actual possession of Warren, but were vacant. Warren obtained the actual possession of the property long after his grant, on December 30, 1904. He then took exclusive possession thereof, and remained in the open, notorious and exclusive possession of the property from that time to the execution of the mortgage by Smith to plaintiff on June 9, 1905, and since. At the time the plaintiff took the mortgage on the property, it was affected with notice of the possession of Warren. It was then put upon inquiry as to whether Warren, the grantor, continued in the

possession at the time of his grant, and, if not, then upon inquiry as to the rights and interests which he claimed in the property.

We are therefore of the opinion that under the facts and circumstances of this case the plaintiff, at the time it took the mortgage on the land in June, 1905, was chargeable with notice of such rights and interests as Warren had in the property.

The decree is accordingly affirmed.