## TEGARDEN *v.* HURST.

### Opinion delivered April 17, 1916.

1. REFORMATION OF DEEDS—SUFFICIENCY OF EVIDENCE.—Where appellee's grantor deeded certain land to appellant's grantor, which included a certain tract which appellee's grantor continued to occupy for fourteen years, and which appellant made a claim to; after a survey was made; *held,* the evidence was sufficiently strong and convincing to warrant a reformation of the deed at the suit of the appellee.

2. DEEDS—POSSESSION OF GRANTOR—PRESUMPTION.—When the grantor continues to occupy a portion of certain land conveyed, for a period of fourteen years, openly and notoriously, the presumption that he holds the claim in subordination to the grantee, is overcome.

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; affirmed.

*S. W. Woods,* for appellant.

1. There was no mistake in the deed from Hurst to Estes and there could be no reformation of deeds. 105

Ark. 455; 104 *Id*. 475; 71 *Id*. 185; 84 *Id*. 349; 75 *Id*. 72. The deeds are the best evidence of the intentions of the parties. 75 Ark. 72; 71 *Id*. 614. Before there can be a reformation of a deed, it must be shown by clear and convincing testimony, not only that there was a mistake in the deed, but that the mistake was mutual. 74 Ark. 336; 101 *Id*. 135; *Ib*. 461; 104 *Id*. 475.

2. Tegarden was an innocent purchaser. 96 Ark. 512; 83 *Id*. 131; 42 *Id*. 362.

3. The record does not establish the appellee's claim or plea of limitation and sustain the decree of the court. Title by limitation must be established by a preponderance of the testimony. 110 Ark. 571; 79 *Id*. 109. The plea of limitation is not sustained. Hurst never held adversely. 58 Ark. 142; 69 *Id*. 562; 84 *Id*. 52; 43 *Id*. 469; 85 *Id*. 520; 96 *Id*. 512; 101 *Id*. 163. The holding was permissive and friendly, not adverse. 43 Ark. 469; 111 *Id*. 604.

4. The burden was appellee's to establish title by limitation. They have failed. 110 Ark. 571; 65 *Id*. 422; 43 *Id*. 469; 57 *Id*. 97.

*Williams & Owens* and *Gus Seawel*, for appellees.

1. The evidence warranted a reformation of the deed so as to except the strip of land in controversy. 71 Ark. 614; 76 *Id*. 43.

2. At the time Tegarden purchased from Estes, he had no sufficient notice of Hurst's claim to the strip. The general rule is that actual possession is sufficient notice. 90 Ark. 149; 82 *Id*. 455. But there is an exception, as where the grantor continues in possession after the grant. 69 Ark. 562; 84 *Id*. 52. Actual possession is sufficient to put subsequent purchasers on notice. 101 Ark. 171.

3. The doctrine of estoppel does not apply. 76 Ark. 25; 66 *Id*. 167; 55 *Id*. 318; 90 *Id*. 149; 82 *Id*. 455.

4. The evidence does not sustain the plea of limitation. 669 Ark. 562; 80 *Id*. 575, 444; 81 *Id*. 258; 80 *Id*. 435.

McCULLOCH, C. J. This is an action instituted in the chancery court of Marion County, seeking the reformation of a deed conveying lands in that county, and the liti-

gation concerns the ownership of a small tract of land containing about four acres. It is a part of the northeast quarter of the northwest quarter of section 6, township 18 north, range fifteen west, and lies north of Crooked Creek, which runs through the above mentioned subdivision. The land originally belonged to John M. Hurst, who owned about five hundred acres including the land in controversy. The deed sought to be reformed is one which was executed by Hurst to Nathaniel Estes on February 25, 1899. At that time Hurst owned five hundred acres, as above stated, of which above three hundred acres were south of Crooked Creek, and the remainder north of the creek. A portion of the lands on each side of the creek was fenced and in cultivation, and the land in controversy was embraced in the fence which enclosed the farm lying on the north side of the creek.

In the year 1895, Hurst mortgaged the lands south of the creek to Mr. A. S. Layton, including said northeast quarter of the northwest quarter of section 6, which embraced the lands in controversy. The description in the deed from Hurst to Estes was copied from the mortgage executed by Hurst to Layton. The trade between Hurst and Estes was that the former was to convey to the latter the lands which had been mortgaged to Layton in consideration of the payment of the mortgage debt by Estes. The contention of Hurst is that the land in controversy was not intended to be included in the mortgage to Layton, or, at least, that he did not understand that it was so included, and that in the trade with Estes, it was understood that he was only conveying the lands south of the creek, and not any of the lands embraced in his farm on the north side of the creek. Hurst continued in possession of the lands in controversy on the north side of the creek, and no question was ever raised as to his right thereto until the summer of 1913. Estes sold the lands to U. S. Tegarden and conveyed the same to him by deed dated September 8, 1908, and Hurst conveyed the land in controversy, with other lands, to W. H. Bryant on July 16, 1913. Bryant took possession under his purchase from

Hurst and shortly thereafter a controversy arose between Bryant and Tegarden as to ownership of this land.

This suit was instituted by Bryant and Hurst against Tegarden and Estes to require a reformation of the deed from Hurst to Estes, and Tegarden filed a cross-complaint, asking for recovery of possession of the lands in controversy, and the rents. The defendants denied in their answer that there was any mistake in the deed from Hurst to Estes, and in the cross-complaint alleged that Bryant was unlawfully in possession of the land in controversy. Bryant answered the cross-complaint, among other things setting up the seven years statute of limitation in bar of Tegarden's right to recover possession of the land. On the final hearing of the cause, the chancellor found against the plaintiffs as to a right to a reformation of the deed, but found in Bryant's favor on the plea of limitations, and dismissed, for want of equity, the cross-complaint of Tegarden.

We are of the opinion that the chancellor was correct in rendering a decree in favor of Bryant on his plea of limitations, but we are also of the opinion that the evidence was sufficient to warrant the reformation of the deed, and that the decree should have been in favor of Bryant on that additional ground. The testimony is undisputed that the small tract of land in controversy was, at the time of the conveyance to Nathaniel Estes, inclosed as a part of the Hurst farm lying north of the creek, and Hurst continued to occupy it without any question being raised about his right to do so until he sold it to Bryant in the year 1913—a period of about fourteen years. Hurst testified positively that the trade made with Estes was that he was to sell and convey only the lands south of the creek, and that there was no intention to embrace any of the lands which constituted the farm lying north of the creek. Another witness—one of Hurst's sons—testified that he was present when the trade was made, and that the understanding was that the sale was only to cover lands south of the creek. L. M. Duren testified that Hurst employed him to prepare the deed to Estes, and told him

that it was intended to convey only the lands south of the creek, and that Estes also told him that he was buying all of the Hurst lands south of the creek, and wanted to get the descriptions accurate so as to cover that land. He testified that he prepared the deed covering only the land south of the creek, and after reading it over to Estes, delivered it to the latter for the purpose of having the latter's son examine it. There is no explanation in the record as to what became of the deed which Duren said that he prepared, but the proof establishes the fact that Estes did not deliver that deed to Hurst, but on the contrary, had another deed prepared by his son which described the whole of the northeast of the northwest quarter of section 6, thus including the land in controversy.

There are quite a number of witnesses who testify that Mr. Estes told them, about the time the trade was made and at times thereafter, that he had not purchased any land north of the creek, and that the creek was the line between his lands, and those which Hurst remained the owner of. Some of those witnesses were relatives of Hurst, and were not altogether disinterested in this controversy, but several of them were, so far as appear in this record, disinterested. Mr. Estes testified in the case, and he admits that he always considered the creek as practically the line between the two tracts. In fact, he wrote a letter to Bryant in which he stated that he did not know where his corner was across the creek, but that he did not suppose that it took in any land that amounted to anything in Hurst's field, and that the creek was the boundary line "in a practical sense." Duren testified, as has already been mentioned, that he wrote the description so as to exclude any part of the land lying north of the creek, and that he read the deed over to Mr. Estes at the time he delivered it to him. This is not denied by Mr. Estes in his deposition.

(1) The inference is very strong that the parties never intended that any of Hurst's farm lands north of the creek were to be embraced in the sale to Estes. This view is very greatly strengthened by the fact that Hurst

remained in unchallenged possession of this land for four-teen years, and that his right to hold the lands in contro-versy was never questioned until a survey was made by Tegarden in the summer of 1913. It is true that Hurst concedes that it was understood that he was selling the lands that were embraced in the Layton mortgage, but he explains that it was not intended that the land in contro-versy should be included in the Layton mortgage, and that he did not suppose that it was so included, and that it was distinctly understood in his trade with Estes that none of the land north of the creek was to be included. So we are of the opinion that the evidence is sufficiently strong and convincing to justify a reformation of the deed, and that that relief ought to have been granted.

(2)  We are also of the opinion that the evidence shows very clearly an intention on the part of Hurst to hold the land in hostility to any other claim, and that even if there was no right to reformation that Hurst's occupancy ripened into a title by adverse possession for the statutory period. On that branch of the case, the de-fendants invoke the doctrine that where a grantor remains in possession, there is a presumption that he does so in subordination to the title he has granted, and not in hos-tility thereto. While that is true, there is an exception where the occupancy continues unexplained for an unrea-sonable length of time and under those circumstances, the presumption is gradually overcome by lapse of time. *American Building & Loan Association* v. *Warren*, 101 Ark 163. The fact that Hurst remained in undisputed pos-session of the land, openly and notoriously, for a period of fourteen years is sufficient to overcome the presump-tion that he was holding in subordination to his original grant. Such occupancy was, under the circumstances, sufficient notice to Tegarden as to the hostility of the possession. He admits in his testimony that when he was negotiating a purchase from Estes, he was told that the line went right across the river, and to some extent into Hurst's field, and he was therefore put upon notice that there was an adverse occupancy which had at that

time continued for a period of about nine years. He is therefore in no better attitude than was his grantor, Nathaniel Estes, for he had notice of the adverse claim, and had no right to rest upon a presumption that Hurst, the original grantor, was holding possession in subordination of his conveyance to Estes.

The decree fixes the title in the plaintiff, Bryant, and in effect gives him the relief which he sought in his complaint, or at least relief which is tantamount thereto. The decree is therefore affirmed.