SHELBY *v.* SHELBY.

Opinion delivered December 8, 1930.

*W. D. Jones* and *T. M. Hooker,* for appellant.
*Bridges, McGaughy & Bridges,* for appellee.

McHANEY, J. In the year 1899, appellant and his two brothers, W. J. and George A. Shelby, acquired a tract of land in, or adjacent to, the town of Wabbaseka, containing approximately 3.71 acres, and including the strip of land in controversy, containing about 1.25 acres, or the north 1/3 of the tract. In about 1901, they built a house on the south part of the tract for appellant, and some two or three years later they built a house on the north end of the tract, behind which, and on the land in controversy, a barn was built. In 1909 they decided to divide the land, and W. J. and George A. deeded to appellant a portion of the tract, describing it by metes and bounds, but omitting the township, the range, the county and State in which the land is located.

It is conceded that there was no intention to convey to appellant the whole of the 3.71-acre tract, but only a part thereof. Twelve years later, in 1921, appellant, conceiving that his deed was void for lack of description, secured from George A. and his wife, the appellee, and Nannie, who is, and was at that time, the widow of W. J.,

a correction deed, supplying the supposed defects in the former deed. This latter deed contained the same metes and bounds description as the former, and recited that it conveyed 2.52 acres of land, which in fact constituted the south 2/3 of said tract. W. J. and George A. Shelby went into possession of the north 1/3, including the land in controversy, and built a fence between their property and that deeded to appellant. In 1910 W. J. Shelby died testate, leaving his wife, Nannie, and his brother, George A, each a one-half interest in this property. Later Nannie sold all her interest therein to George A., who continued in exclusive possession thereof to his death in 1922, leaving surviving his widow, the appellee, who continues to the present time in possession thereof as a homestead. In 1926, appellant sought to build a fence on what he claimed to be the correct line according to the description in his deed, but appellee prevented him from so doing. He thereupon instituted this action against her to enjoin her from interfering with his right to the land and his right to build the fence, and to quiet title to said strip of land in him.

Appellee answered that the first deed appellant obtained from his brothers was void for want of proper description; that the second or correction deed was obtained through misrepresentation and fraud, in that he told the grantors that the description conveyed only the south two-thirds of the tract, and that it was void because executed and delivered on Sunday; and that she had acquired title to the north one-third thereof by adverse possession. On a trial the court found for appellee and that she "is the owner of all the land now held in possession by her, extending as far south as the division fence now located." Decree was entered quieting title thereto in her and dismissing appellant's complaint for want of equity.

We find it necessary to discuss only one question, that of adverse possession, to a proper determination of this case. We think the trial court reached the correct conclusion in finding the issues of both law and fact

against appellant. If the line should be established where appellant contends it should be, he would have more than three-fourths of the acreage. Was any such result intended by the three brothers in 1909 when they divided it? We think not, and that the preponderance of the evidence, when all the attendant circumstances are considered, support the court's finding to the contrary. Two of the brothers are now dead and were long before this suit was instituted. Their mouths are closed, but their acts and deeds are still living witnesses. The fact that W. J. and George A. immediately took possession of exactly one-third of the land; that they built a fence on the division line where no fence had been before; that they thereafter paid the taxes on 1.25 acres of this land; that when W. J. died, he left one-half of it to his widow and one-half to his brother George A.; that thereafter the widow conveyed her one-half to George A. by deed; that they remained in possession of the north one-third from 1909 to 1926 without question of right, during which time they made valuable improvements—all speak more eloquently than mere witnesses. We cannot escape their effect, as they are all inconsistent with appellant's claim of title to any part of said land north of said division fence.

Appellant contends, however, that appellee is in the situation of a grantor who remains in possession after executing a deed of conveyance, that is, that limitations will not begin to run against the grantee until notice of the hostility of the grantor's claim. But, conceding that she is a grantor in possession and that there was no mutual mistake, or no mistake on her part accompanied by fraud or other inequitable conduct on the part of the grantee in the procurement of the deed, still the possession of appellee and those under or through whom she claims continued for such a length of time as to overcome and rebut the presumption that she was holding in subordination to the title conveyed. In *Stuttgart* v. *John,* 85 Ark. 520, 109 S. W. 541, one of the cases cited and relied on by appellant, this court said: "Where a

vendor, after having executed a deed, remains in possession of the premises conveyed, he is presumed to hold in subordination to the title conveyed, unless there is affirmative evidence of a contrary intention; and, where his occupancy and use are not manifestly inconsistent with the right of his grantee, notice of the hostility of his claim must in some way be brought home to his grantee before the statute of limitations will begin to run." An exception to that rule is stated in *Tegarden* v. *Hurst,* 123 Ark. 354, 185 S. W. 463, where it was said:

"We are also of the opinion that the evidence shows very clearly an intention on the part of Hurst to hold the land in hostility to any other claim, and that, even if there was no right to reformation, that Hurst's occupancy ripened into a title by adverse possession for the statutory period. On that branch of the case, the defendants invoke the doctrine that where a grantor remains in possession, there is a presumption that he does so in subordination to the title he has granted, and not in hostility thereto. While that is true, there is an exception where the occupancy continues unexplained for an unreasonable length of time, and under those circumstances the presumption is gradually overcome by lapse of time. *American Building & Loan Assn.* v. *Warren,* 101 Ark. 163, 141 S. W. 765. The fact that Hurst remained in undisputed possession of the land, openly and notoriously, for a period of fourteen years is sufficient to overcome the presumption that he was holding in subordination to his original grant. Such occupancy was, under the circumstances, sufficient notice to Tegarden as to the hostility of the possession. He admits in his testimony that when he was negotiating a purchase from Estes, he was told that the line went right across the river, and to some extent into Hurst's field, and he was therefore put upon notice that there was an adverse occupancy which had at that time continued for a period of about nine years. He is therefore in no better attitude than was his grantor, Nathaniel Estes, for he had notice of the adverse claim, and had no right to rest upon a

presumption that Hurst, the original grantor, was holding possession in subordination of his conveyance to Estes.''

Moreover there were many definite acts of ownership of the strip in controversy after the conveyance which were sufficient to bring notice home to appellant that title was being claimed to the division fence in hostility to the claim now asserted, and ''much affirmative evidence of a contrary intention'' to hold subordinate to the title described in the deed. When all is considered, together with the length of time which has elapsed in which undisputed possession was had, seventeen years, openly and notoriously, the court was correct in holding that the presumption that she was holding in subordination to the original grant was overcome. Her occupancy and those through whom she claimed, was, under the circumstances already related, sufficient notice to appellant of the hostility of the possession.

Affirmed.