ANDERSON *v.* BURFORD.

4-7766                                        190 S. W. 2d 961

Opinion delivered December 3, 1945.

Rehearing denied January 7, 1946.

*Arthur D. Chavis,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

HOLT, J. Appellants own lot 16 in block 9 in Ring-ler's Addition to the city of Pine Bluff, Arkansas, and appellee owns lot 15 which borders lot 16 on the south, and also lot 14 immediately south of and adjoining lot 15. Lot 15 was approximately 50 feet wide and 146 feet long. On December 14, 1931, appellee, E. G. Burford, conveyed by warranty deed, the north 43 feet of lot 15 to appellants by metes and bounds description. At the time of this conveyance, there was a fence, extending the entire length, on what appeared to be the south boundary line of said 43 feet purchased by appellants. This fence has remained there continuously since; however, it was not on the true line at the time of the sale to appellants, but was located about 10 feet north of the south line of the said 43 feet, so that appellants had within their fence and enclosed only 33 feet of the 43 feet described in appellee's deed to them.

This litigation involves the title to the 10-foot strip of land, *supra,* and appellants on September 27, 1944, sued, asserting title and the right to possession. Appellee answered with a general denial and pleaded adverse possession for a period of approximately 14 years and laches. The trial court found the issues in favor of appellee and this appeal followed.

It appears that appellee has at all times, for a period of more than 13 years, asserted claim to this strip of land. He kept it enclosed by a fence, received rent from a tenant for its use as a driveway and placed a gate at the east end of this strip.

Appellant testified: "How long have you lived there? A. I have lived there thirteen years. Q. And you bought that lot from Mr. Burford? A. Yes, sir. Q. Was the fence there when you bought from Mr. Burford? A. Yes, sir. Q. About where it is now? A. Yes, sir. Q. Was there a fence around the place when you bought it from Mr. Burford? A. Yes, sir. Q. That's the part that's fenced now? A. Yes, sir. . . . Q. How much have you got enclosed by this fence, north and south? A. Thirty feet and eight inches. . . . Q. When you bought the lot from Mr. Burford, did you think the fence was on the line? A. Yes, sir, I sure did. . . . A. He never did say anything about the line to me, no, sir."

Both appellants and appellee thought the fence was on the dividing line or true line, where it has remained undisturbed for more than 13 years.

In these circumstances, we think that appellee's occupancy ripened into a title to the property in controversy by adverse possession for the statutory period.

Appellants argue that although appellee, the grantor of the strip of land in question, has remained in possession and has continued occupancy since his deed to appellants, there is a presumption that he has done so in recognition of their rights and in subordination to the title he has conveyed and not in hostility thereto. While this would ordinarily be true, there is an exception into which the case falls.

454

The general rule, which is recognized by this court in a case such as this is stated in 2 C. J. S., p. 824, § 216 f. "Occupancy by the grantor of realty obsolutely conveyed is generally presumed to be in subordination to the rights of the grantee. The presumption is not continuing, however, and its probative force diminishes with the lapse of time and with long continued possession may cease to exist. So the presumption may be rebutted by proof that the possession was adverse and that the grantee knew it." A number of Arkansas cases are cited in support of the text. In one of these cited cases, *Tegarden* v. *Hurst,* 123 Ark. 354, 185 S. W. 463, this court said: "We are also of the opinion that the evidence shows very clearly an intention on the part of Hurst to hold the land in hostility to any other claim, and that even if there was no right to reformation that Hurst's occupancy ripened into a title by adverse possession for the statutory period. On that branch of the case, the defendants invoke the doctrine that where a grantor remains in possession, there is a presumption that he does so in subordination to the title he has granted, and not in hostility thereto. While that is true, there is an exception where the occupancy continues unexplained for an unreasonable length of time and under those circumstances, the presumption is gradually overcome by lapse of time. *American Building & Loan Association* v. *Warren,* 101 Ark. 163, 141 S. W. 765. The fact that Hurst remained in undisputed possession of the land, openly and notoriously, for a period of fourteen years is sufficient to overcome the presumption that he was holding in subordination to his original grant. Such occupancy was, under the circumstances, sufficient notice to Tegarden as to the hostility of the possession," and in the more recent case of *Davis* v. *Burford,* 197 Ark. 965, 125 S. W. 2d 789, we said: "While it is true, as we have held, that where the grantor of land remains in possession, there is a presumption that he holds in subordination to his grantee, it is also true that such presumption fades away with the lapse of time where his occupancy is unexplained. *Turman* v. *Bell,* 54 Ark. 273, 15 S. W. 886, 26 Am. St. Rep. 35; *Tegarden* v. *Hurst,* 123 Ark.

354, 185 S. W. 463; *Shelby* v. *Shelby*, 182 Ark. 881, 32 S. W. 2d 1071. In the Tegarden case 14 years' possession was held sufficient, and in the Shelby case 17 years. Here Cross held possession for 23 years and is still in possession." See, also, *St. Louis Southwestern Railway Company* v. *Fulkerson,* 177 Ark. 723, 7 S. W. 2d 789.

So here, since it appears that appellee has claimed and occupied this property openly and adversely for the statutory period, his occupancy has ripened into title, and the decree should be, and is affirmed.