Jimmie Thompson RICKETT and David Lynn Rickett *v*. Clara Faye O'DELL and Fred O'Dell, *husband and wife*; Julie O'Dell Wilbur; Jonathan O'Dell; and Joseph O'Dell

CA 02-1357                                                    160 S.W.3d 717

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered April 28, 2004

*Oscar E. Jones*, for appellant.

*Gary Vinson*, for appellees.

ROBERT J. GLADWIN, Judge. On August 27, 2002, the Independence County Circuit Court entered a decree quieting title to a .356 acre of land in favor of appellees. Appellants argue that the trial court erred in finding that appellees held title to the disputed strip of land by adverse possession. Appellees argue that the trial court could have reformed appellees' deed to include the disputed strip of land based on mutual mistake. We agree with appellants that the trial court erred. Accordingly, we reverse and remand.

Nora Smith and her husband owned eighty acres in Independence County. Their daughter, appellee Clara Faye O'Dell, and her husband, Fred, built a house on the land in 1948. Other

family members were allowed to live on the land as well. Clara Faye and Fred lived in the house until the mid-1950s, at which point they moved to Memphis, Tennessee, and Mr. and Mrs. Smith moved into the house. Mr. Smith died in 1975, and soon afterwards Fred built a shed behind the house where Mrs. Smith still lived. In 1986, Mrs. Smith deeded the eighty acres to her three children. Appellee Clara Faye got the western one-third; appellant Jimmie Rickett got the middle one-third; and Ralph Smith got the eastern one-third. In Clara Faye's deed, Mrs. Smith reserved for herself a life estate in one square acre surrounding the house. In 1995, because of her poor health, Mrs. Smith moved in with Clara Faye. Mrs. Smith died in 1997.

In 2001, appellees' sons, Jonathan and Joseph, expressed their intent to erect a permanent fence for horses. In response, Jimmie's son, David Rickett, had a lawyer send a letter to appellees stating that no fences should be built until after a survey was completed. In May 2001, the survey revealed that the property line dividing appellees' western one-third from appellants' middle one-third went through the middle of the house and that the shed rested almost entirely on appellant's middle one-third. In addition, the survey showed that the driveway that was used as the primary access to the house was on appellant's property.

Clara Faye O'Dell testified that she had never told anyone that she owned the disputed land and that she thought it was understood that her land extended to the far side of the driveway because it was so near the house. Clara Faye also stated that, after the deeds were prepared, she knew that there was a problem with the boundary line between the tracts deeded to her and to her sister Jimmie. She testified that the two of them had joked about the property line running through the middle of the house. According to Clara Faye, she told Jimmie that she was going to have to help pay the taxes on the house and that Jimmie told her that she was not because the house was not hers. She testified that the first time she and Jimmie had a disagreement about the boundary line was sometime around April 2001. Clara Faye stated that Jimmie should have known that she claimed the boundary to be on the east side of the driveway because the driveway had always been there, but she conceded that she did not know what would have put Jimmie on notice of her claim. She testified that currently her son Jonathan lives in the house and that he drives "those big trucks." Clara Faye stated that Jonathan needed to use the driveway in question even though there is a driveway on her property because she cannot

move the truck every time she needs to get out. She said that using her property would also require that pipes be dug up and utility wires moved. Clara Faye also testified that Jonathan had asked Jimmie's daughter Susan about sharing the driveway. She testified that there was no question that her mother wanted her and her siblings to have equal shares of the farm. Clara Faye stated that she thought she owned the one acre in which her mother had reserved a life estate. She stated that in her mind the house and driveway were part of the land she was getting.

Jonathan O'Dell testified that he made the driveway in question into a circular drive in order to get his trailers and vehicles out without having to back them out of the driveway. Jonathan testified that he offered to let Susan use the driveway. He stated that he did not know where the boundary line was until it was surveyed but that he had always thought the land went past the driveway. He could not recall ever telling appellants that his family owned the driveway, and he stated that he had never excluded appellants from using it. Jonathan testified that the "fuss" arose over the property about a year prior to his testimony. He stated that his cutting a couple of trees after a tornado was what started the feud.

Fred O'Dell testified that he understood the boundary line to be on the far side of the driveway based on what Mr. Smith had told him years ago but that he had never told anyone that he owned the land. He testified that his family and appellants were using the driveway without interference. He stated that he has maintained the disputed strip of land. Following a tornado in January 1999, he paid for the clean up and had dirt hauled in to fill up holes where the trees had been root wadded. Fred stated that appellants had not offered to pay for any of the cleanup. Fred stated that the only thing he had done to put appellants on notice was that he had maintained the land in the past and was continuing to maintain it.

Joseph O'Dell testified that he always felt that the driveway went with the house and that, prior to the survey, he thought the property line was east of the driveway. He stated that before the survey there was no indication that anyone was claiming to own the property. Joseph testified that the driveway had always been used and shared equally. He stated that he knew his grandmother, Mrs. Smith, meant for his mother to have the house and driveway.

Jimmie Rickett testified that appellees had never at any time told her that they claimed to own the land from the house to the

east side of the driveway. She stated that everyone used the driveway when they wanted. Jimmie testified that she did not want the house and that it had never been hers. She stated that there was never any question in her mind that Clara Faye was to get the house. Jimmie stated that she felt, however, that she owned the dirt underneath the house. She testified that her mother wanted her three children to have exactly the same amount of property.

David Rickett testified that four months prior to the dispute about the fence, Joseph had offered to buy the strip of land and that he told him what his mother had said — that there was no land for sale. He testified that after the survey appellees would not stay off of the land in dispute. He stated that he put up a fence to swap out equal frontage with Joseph and that Joseph had blocked the fence line with his truck, which resulted in appellants' calling the sheriff. David stated that ever since the survey, Jonathan parked his company truck to block the driveway so that the school bus would have to drive around to pick up his sister's autistic child. He stated that prior to the survey there were no problems with the driveway, no one claimed to own it, and no one told him not to use it. He stated that, in addition to his sister using the driveway, he drove his four-wheeler on it and that anyone used it as needed.

Susan Rickett Bennett testified that she did not realize there was a problem with the boundary line until after the survey and that it was then that the O'Dells and the Ricketts became at odds with each other. Susan testified that Joseph told her that he was going to fence the property and doze behind the horse pen and that she told her brother David, who sent appellees a letter. She stated that before the conversation with Joseph, there was no indication that the O'Dells were claiming that they owned the land extending to the east side of the driveway. She stated that Jonathan had come to her asking to share the driveway. He wanted her to help pay for graveling it, which she refused to do but continued to use the driveway.

Kendall Rickett, Jimmie's older son, testified that the first time appellees claimed legal title to the property, including the driveway, was following the tree-cutting incident. He stated that everybody knew approximately where the property line was and that no one cared. Kendall testified that no one had ever claimed to own the land exclusive to all others. He testified that he had also mowed and maintained the disputed land. Finally, he stated that it was his understanding that his grandmother intended for her children to get exactly the same amount of land.

In its decree, the trial court pointed out that Clara Faye and Fred O'Dell had built the house in 1948 and had built the shed in the 1970s. The court then found that "from the proof presented that the petitioners had control under color of title of the .356 acre of property described in Exhibit 2, and which is the subject matter of this dispute, for the length of time and under the conditions such that the statute of limitations has run as to any other parties claiming title to the same." In addition, the court found that the driveway in question had been used as access to the house and shed for more than twenty-one years and that appellees had established their claim to that part of the disputed land as well.

■■ Whether possession is adverse to the true owner is a question of fact. *Tolson v. Dunn*, 48 Ark. App. 219, 893 S.W.2d 354 (1995). In order to establish title by adverse possession, appellees had the burden of proving that they had been in possession that was visible, notorious, distinct, exclusive, hostile, and with the intent to hold adversely against the true owner. *Id.* If the original use and possession was permissive, it cannot become adverse until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice; the evidence of adverse holding when the original entry is by permission must be very clear. *Id.* When possession, in its incipiency, is shown to be permissive, there is a presumption of law that the subsequent possession of the same party is also permissive. *Dial v. Armstrong*, 195 Ark. 621, 113 S.W.2d 503 (1938).

■ Appellants argue that there could not have been any claim of adverse possession until 1997 when Mrs. Smith's life estate was extinguished by her death. We agree. Where a grantor, after having executed a deed, remains in possession of the premises conveyed, she is presumed to hold in subordination to the title conveyed, unless there is affirmative evidence of a contrary intention and where her occupancy and use are not manifestly inconsistent with the right of her grantee. *See Shelby v. Shelby*, 182 Ark. 881, 32 S.W.2d 1071 (1930). Notice of the hostility of her claim must in some way be brought home to her grantee before the statute of limitations will begin to run. *See id.*

■ Relying on an exception to the presumption, appellees contend that the presumption was gradually overcome, or rebutted, because Mrs. Smith's and their occupancy of the land contin-

ued unexplained for an unreasonable amount of time, specifically, since 1986. Appellees assert that, by reserving a life estate in the land, Mrs. Smith made it clear that she thought the house and acre were within the western one-third and that she was claiming it as her own. We agree that Clara Faye's deed is some indication that Mrs. Smith thought the disputed land was part of the western one-third; however, what is equally clear from both parties' testimony is that Mrs. Smith intended for her children to have equal shares of property. We disagree that Mrs. Smith claimed the disputed land as her own because her continued possession of the land was explained by her reservation of a life estate. Reserving a life estate in property, standing alone, is not an adverse holding. Here, there was no evidence that Mrs. Smith held the land adversely to anyone. Moreover, the evidence reflected that appellees' subsequent possession was likewise not adverse. The testimony from both parties was consistent that no one claimed the disputed strip of land to the exclusion of all others.

■ Appellees' continued possession of the land, to which appellants held the legal title, was permissive and amicable, such as might be expected among family members. Their possession did not become adverse until some time around 2001 when the land was surveyed. Accordingly, the trial court clearly erred in finding that appellees had acquired the property by adverse possession.

■ Alternatively, appellees argue that the trial court could have reformed the deed to correct the mutual mistake made by everyone in believing that the strip was part of the western one-third. Whether a mutual mistake occurred that warrants reformation is a question of fact for the trial court to determine. *See Statler v. Painter*, 84 Ark. App. 114, 133 S.W.3d 425 (2003). However, reformation was neither pled nor argued to the trial court; consequently, the matter is not an issue here on appeal.

Reversed and remanded.

PITTMAN, ROBBINS, GRIFFEN, and NEAL, JJ., agree.

BAKER, J., dissents.

KAREN R. BAKER, Judge, dissenting. The majority's opinion is based upon two premises, neither of which is supported by the law or the facts in this case. The majority holds that, as a matter of law, Mrs. Smith's reservation of a life estate in the O'Dells' deed

explained her continued possession of the Ricketts' land. I can find no case that supports this premise, and the majority cites none. The reservation of the life estate describing the house and one acre was contained only in the deed conveying ownership to the O'Dells' land. The separate deed to the Ricketts contained no reservation of any rights whatsoever.

The second premise is that Mrs. Smith's continued possession of the Ricketts' property was presumed to be in subordination to the title conveyed to the Ricketts because she was the grantor of the land to the Ricketts, and the trial court erred in finding that the presumption was overcome.

In support of this second proposition, the majority cites *Shelby v. Shelby,* 182 Ark. 881, 32 S.W.2d 1071 (1930). However, *Shelby* does not support the majority's disposition of this case. In *Shelby,* our supreme court rejected the appellant's argument that the presumption that a grantor's possession is in subordination to the title conveyed, unless there is affirmative evidence of a contrary intention, precluded a finding of adverse possession. In rejecting appellant's argument in *Shelby,* the court recognized the rule regarding subordination set forth in *Stuttgart v. John,* 85 Ark. 520, 109 S.W. 541 (1908) (finding that where owners of land lay out a town or an addition to a city or town upon it, platting it into blocks and lots, intersected by streets and alleys, and sell lots by reference to the plat, they thereby dedicate the streets and alleys to the public use, and that such dedication is irrevocable).

However, the court in *Shelby* found unpersuasive the argument that the general presumption precluded the trial court from finding adverse possession. In finding the presumption had been overcome, the *Shelby* court noted that "they remained in possession of the north one-third from 1909 to 1926 without question of right" and concluded that "[h]er occupancy and those through whom she claimed, was, under the circumstances ... sufficient notice to appellant of the hostility of the possession."

The majority states that in this case the "appellees contend that the presumption was gradually overcome or rebutted, because Mrs. Smith's and their occupancy of the land continued unexplained for an unreasonable amount of time, specifically, since 1986." Appellees' argument is well taken given that *Shelby,* and every case following it, has upheld the trial court's determination that the presumption was rebutted. *See Anderson v. Burford,* 209 Ark. 452, 190 S.W.2d 961 (1946) (holding presumption is not

continuing, its probative force diminishes with the lapse of time and with long continued possession may cease to exist); *Davis v. Burford*, 197 Ark. 965, 125 S.W.2d 789 (1939) (presumption overcome with twenty-three years of continued possession by original grantor).

In the present case, Mrs. Smith and the O'Dells possessed the disputed one-third acre in this case without question of right from the 1986 division of the property until the survey conducted in 2001, a period of fifteen years. Undisputed possession of the land, openly and notoriously, for a period of fourteen years is sufficient to overcome the presumption that grantor was holding in subordination of his original grant. *Shelby, supra* (*citing Tegarden v. Hurst*, 123 Ark. 354, 185 S.W. 463 (1916)).

The majority ignores this well-established precedent and attempts to explain Mrs. Smith's and the O'Dells' occupancy of the disputed track by Mrs. Smith's reservation of the life estate in the O'Dell deed. If Mrs. Smith had reserved a life estate in the entire eighty acres in each grantees' deed, then the majority's position would have more validity. Unfortunately, the majority does not address the fact that the reservation of the life estate is only contained in the land granted to the O'Dells. Mrs. Smith's continued possession of the disputed tract after reserving the life estate in the O'Dells' deed is further evidence that both she and the O'Dells intended to possess the disputed tract. The majority states that Mrs. Smith's reservation of a life estate in the O'Dell deed "is some indication that [she] thought the disputed land was part of the western one-third; however, what is equally clear from both parties' testimony is that Mrs. Smith intended for her children to have equal shares of the property." The majority does not conclude that Mrs. Smith intended the boundary line of the property to pass through the existing house, and the evidence does not support the conclusion that she intended to divide the geographical ownership of the house.

Reversing the trial court on a credibility and factual determination regarding boundary lines when the evidence is equally divided oversteps our bounds. "Whether possession is adverse to the true owner is a question of fact. We also note that a claimant may 'tack on' the adverse-possession time of an immediate predecessor in title." *White River Levee District v. Reidhar*, 76 Ark. App. 225, 61 S.W. 3d 235 (2001). When the evidence is evenly posed, or nearly so, the judgment of the trial court on the question of where the preponderance of the evidence lies is persuasive. *Belcher*

*v. Stone*, 76 Ark. App. 256, 998 S.W.2d 759 (1999). The location of a boundary is a question of fact, and we affirm unless the trial court's finding is clearly against a preponderance of the evidence. *Killian v. Hill*, 32 Ark.App. 25, 28, 795 S.W.2d 369, 371 (1990). Matters of credibility are for the trial court to determine. *Id.* Boundaries are frequently found to exist at locations other than those shown by an accurate survey of the premises in question and may be affected by the concepts of acquiescence and adverse possession. *Summers v. Dietsch*, 41 Ark.App. 52, 849 S.W.2d 3 (1993).

In this case, the O'Dells received a deed and took possession of the house and the one acre subject to Mrs. Smith's life estate in 1986. Mrs. Smith's possession of the house and one acre is legally recognized by the O'Dells deed. Any and all rights she had to the Ricketts' property was extinguished when she conveyed that property to the Ricketts without reservation. One who enters adversely under color of title and actually possesses any part of the tract is deemed to have constructive possession of the entire area described in the document constituting color of title. *St. Louis Union Trust Co. v. Hillis*, 207 Ark. 811, 182 S.W.2d 882 (1944). Where one enters adversely upon an enclosed tract his possession of any part thereof is constructive possession of the entire enclosure. *Kieffer v. Williams*, 240 Ark. 514, 400 S.W.2d 485 (1966). *See also Moses v. Dautartas* 53 Ark. App. 242, 922 S.W.2d 345 (1999).

The trial judge's determination that both Mrs. Smith and the O'Dells treated the land in dispute as their own is a critical factor in determining whether adverse possession was proven. Appellants argue that the nature of the use of the property could not fairly put them on notice that the O'Dells' use was adverse. However, the continued occupancy of Mrs. Smith and the O'Dells from 1986 forward and the nature of their use of the house, drive, and storage building as a unit, is the very fact that put the Ricketts on notice that the use was adverse. Given the facts presented in this case, the trial judge did not err, and we should affirm.